PUBLISH

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**

_____

No. 95-6814
_____

(District Court No. CV-94-0885-AH-S)

LARRY ROE, on behalf of himself and
all others similarly situated,

Plaintiffs-Appellees,
Cross-Appellants,

versus


STATE OF ALABAMA, JAMES BENNETT,
Alabama Secretary of State, et al.,

Defendants-Appellees,
Cross-Appellants,


CLARENCE T. HELLUMS, JR., on behalf
of himself and all others similarly
situated,

Defendant-Appellant,
Cross-Appellee.

------------------------
Appeals from the United States District Court for the
Southern District of Alabama
-----------------------

**(October 13, 1995)**

Before TJOFLAT, Chief Judge, ANDERSON and BARKETT, Circuit
Judges.


PER CURIAM:


In this case, Larry Roe, on behalf of himself and others who

voted in Alabama's November 8, 1994, general election (the "Roe

Class"), claims that the State of Alabama is attempting to dilute

the votes that the Roe Class cast in that election, in violation

of the Due Process Clause of the Fourteenth Amendment.  This

dilution will occur, the Roe Class contends, if Alabama's election officials comply with the order of a state trial court, issued in <u>Odom v. Bennett</u>, No. 94-2434-R (Montgomery County Cir. Ct. 1994), requiring them to include in their vote totals absentee ballots (the "contested ballots") that do not conform to Ala. Code § 17-10-7 in that they were not enclosed in an envelope bearing the signatures of the voter and either a notary public or two witnesses.  Instead, these ballots were enclosed in envelopes bearing only the voters' signatures.

On December 5, 1994, the district court, concluding that the <u>Odom</u> court's order, if implemented, would retroactively amend the State's election code and "dilute the ballot box," entered a preliminary injunction ordering the Alabama Secretary of State (defendant James Bennett) to certify the election results without counting the contested ballots.  The Secretary of State (and the other state defendants in the case) and John Davis, who had cast a contested ballot and was a plaintiff in <u>Odom v. Bennett</u>, immediately appealed the injunction.  Following oral argument, we affirmed the preliminary injunction in part (including the district court's conclusion that the plaintiffs were likely to prevail on the merits of their constitutional claim), vacated it in part, and certified to the Supreme Court of Alabama the question whether an absentee ballot enclosed in an envelope that does not bear the signature of either a notary public or two witnesses meets the requirement of Ala. Code § 17-10-7.  <u>Roe v. Alabama</u>, 43 F.3d 574 (11th Cir. 1995) (<u>Roe I</u>).  In effect, our

2

decision permitted those elected to all offices except the offices of Chief Justice of the Supreme Court of Alabama and Treasurer of Alabama to be sworn in. Thus, the elections to those two offices are the ones involved in this case.[1]

On March 14, 1995, the Alabama Supreme Court answered the question in the affirmative; the signature of the voter alone, if accompanied by the voter's residence address and reason for voting absentee, satisfies the statute's requirements. Roe v. Mobile County Appointment Bd., No. 1940461, 1995 WL 121871 (Ala. March 14, 1995). In addition to answering the certified question, the court indicated that, in the past, the election officials in some of Alabama's sixty-seven counties had counted ballots such as those that are contested in this case.

After receiving the Alabama Supreme Court's response to our question, we remanded the case to the district court and instructed it to determine whether, prior to and at the time of the November 8, 1994, general election, the practice in Alabama had been to reject or, conversely, to count absentee ballots whose envelope did not include the signature of either a notary public or two witnesses.[2] Roe v. Alabama, 52 F.3d 300 (11th Cir. 1995) (Roe II), cert. denied, ___ U.S. ___ (Oct. 2, 1995).

---

[1] The Republican candidates for chief justice and treasurer, Perry O. Hooper, Sr., and James D. Martin, are plaintiffs in this case; the Democratic candidate for treasurer, Lucille Baxley, is an intervenor.

[2] In remanding the case for this determination, we instructed the district court to make findings of fact on 17 issues. We did not, however, limit the court's authority to try other relevant issues.

Following the receipt of our mandate, and after extensive discovery, the district court and the parties met in pretrial conference and narrowed the issues to be tried. The court, with the consent of all parties, also certified the Roe Class and, after Clarence T. Hellums was substituted for the deceased John Davis, the court certified the Hellums Class (consisting of voters who had cast contested ballots). The Hellums Class then filed two cross claims against the state defendants. The first claim alleged that, by not counting the contested ballots, the state defendants would disenfranchise the Hellums Class in violation of the Due Process Clause of the Fourteenth Amendment; the second claim alleged that the State defendants would deny the Class the equal protection of the laws if they counted contested ballots in some counties but not in others (where the Class members had voted). The claims of the Roe and Hellums classes thus turned on the same question: whether it had been the practice in Alabama prior to and in the November 8 election to count ballots such as the contested ballots. If the practice had been not to count such ballots, the Roe Class would prevail; if the practice had been to count them, the Hellums Class would prevail.

The trial of the case took three days. Introduced into evidence, in addition to the stipulated facts, were the answers to interrogatories that had been propounded, in a format agreed to by the parties, to the election officials in all of Alabama's sixty-seven counties, and the testimony of forty-eight witnesses

4

(thirty-eight of whom testified in person, ten by deposition), including the Secretary of State and a former Attorney General (who had issued the definitive opinion concerning the proper interpretation of Ala. Code § 17-10-7).[3]  On the basis of that evidence, the district court found that the practice in Alabama prior to the November 8, 1994 election, had been uniformly to exclude ballots enclosed in envelopes that did not bear the signature of either a notary public or two witnesses as required by a literal reading of Ala. Code § 17-10-7.[4]

Given this finding of fact, which the state defendants did not contest, the district court concluded that the Roe Class and plaintiff Hooper were entitled to relief; to include the contested ballots in the vote totals would depreciate the votes of the members of the Roe Class and deprive plaintiff Hooper of the office of Chief Justice of Alabama.  The same finding of fact also required the court to reject the claims of the Hellums

_____

[3]  Some of these 48 witnesses testified at the December 5, 1994 hearing on the plaintiffs' motion for a preliminary injunction; the testimony they gave at that hearing was incorporated into the record of the trial.

[4]  The court found this to be the practice in all of Alabama's 67 counties except Washington County.  In Washington County, ballots such as the contested ballots were regularly counted and included in the county's vote totals.  In the November 8, 1994, election, Washington County's vote totals included 14 contested ballots.  In three other counties--where the practice was to exclude such ballots--a total of 35 contested ballots "slipped through" and were counted.  The 49 contested ballots (from these three counties and Washington County) do not affect the outcome of the two elections at issue.  Plaintiff Perry O. Hooper, Sr., prevails in the election for chief justice by a total of 262 votes; intervenor Lucille Baxley prevails in the election for state treasurer by a total of 1,032 votes.

5

Class; eliminating the contested ballots from the vote totals would not operate to deny the members of that class due process or the equal protection of the laws. Accordingly, the district court entered a final judgment that, among other things, ordered the Secretary of State to certify the results of the elections of chief justice and treasurer.

The Hellums Class now appeals the district court's final judgment. It also moves this court to stay the district court's judgment pending the disposition of its appeal. We granted a temporary stay of the final judgment to enable the parties to brief the motion to stay. Because the granting of a stay would turn on the likelihood of the Hellums Class prevailing on the merits of its appeal, see Garcia-Mir v. Meese, 781 F.2d 1450 (11th Cir. 1986); 11th Cir. R. 27-1(b)(1), we directed the parties to brief the merits as well. They have done so, and we have heard argument thereon.

For the reasons that follow, we conclude that the Hellums Class cannot prevail on appeal. Accordingly, we deny its motion to stay and affirm the judgment of the district court.

First, the district court's findings of fact are not clearly erroneous; rather, its findings are supported overwhelmingly by the evidence. With the exception of Washington County, there has been no practice to count ballots that bear only the signature of the voter. Indeed, the practice has been to require, in the words of Ala. Code § 17-10-7, in addition to the voter's signature, the signature of either a notary public or two

6

witnesses.[5]  Given this practice, we fail to see how the State's

refusal to count the contested ballots could deny the Hellums

Class due process of law, the Class' first cross claim.  The

Class' second cross claim fails because refusing to count the

---

[5]  The Hellums Class contends that the district court precluded the Class from engaging in discovery that might have undercut the evidence of "past practice" on which the district court relied.  Specifically, the Class argues that the district court abused its discretion in not permitting it to count the absentee ballot envelopes (in each of Alabama's 67 counties) from past elections (as well as the November 8, 1994, election; among these envelopes, the Class contends, there may be a significant number that, like the contested ballot envelopes, are without the signature of either a notary public or two witnesses.  Such envelopes would presumably establish that the practice the district court found to be uniform was, in fact, not uniform.  If not uniform, the argument concludes, then not counting the contested ballots would deny the Hellums Class' right to due process and equal protection (the Class' two cross claims).

The district court barred the requested discovery because (as the court stated in the addendum to its final judgment) to permit the Hellums Class to inspect the approximately 100,000 envelopes would prolong the proceedings and delay interminably the disposition of the case.  The Hellums Class made no showing that it was likely that a significant number of nonconforming envelopes would be uncovered; moreover, the testimony of the election officials before the court, considered as a whole, demonstrated no likelihood that a significant number of nonconforming ballots existed.

Finally, we note that John Davis, in the complaint he and Michael Odom filed in Odom v. Bennett, alleged that the election officials in all of Alabama's 67 counties were rejecting the contested ballots on the instructions of the Secretary of State. The Secretary's instructions were in keeping with the opinion the Alabama Attorney General issued in 1980 (which emphasized that absentee ballots must bear the signature of either a notary public or two witnesses) and the Alabama Election Handbook (written by the Alabama Law Institute) and the Alabama Voter's Guide, both of which were issued by every Secretary of State thereafter.

In sum, we find no merit in the Hellums Class' argument that the district court abused its discretion in denying the Class the discovery in question.

contested ballots could not deny them equal protection of the law. The fact that a small number of contested ballots (forty-nine) slipped through is of no consequence.

The Hellums Class' fall-back position, as outlined to us in oral argument, is that neither class states a claim cognizable under the United States Constitution. In other words, we should revisit Roe I and Roe II, which, in affirming the district court's preliminary injunction, held that Roe had presented a claim under the Constitution.[6]

---

[6] The Hellums Class argues that the Roe Class claim fails because that Class did not establish an essential element of its claim: that without the burden of the notary/two witness requirement, persons who did not vote would have voted in the November 8, 1994, general election. According to the Hellums Class, the Roe I panel erred, in footnote 15 of its opinion, in taking "judicial notice of the fact that reducing the inconvenience of voting absentee--by eliminating the necessity of obtaining the signature of a notary or two witnesses--would increase the number of absentee ballots."

We doubt that this point is an essential element of the Roe Class' claim. The Roe Class included those who voted (as well as those who would have voted but for the burden of executing a proper affidavit); their claim is that their votes would be diluted if the contested ballots were counted. Assuming, however, that the element in question is essential to the Roe Class' claim, we conclude that the Hellums Class effectively stipulated that the element had been established. At the pretrial conference, in submitting the issues to be tried, counsel for the Hellums Class said nothing that would indicate that the Roe Class had to produce a witness who would say that he would have voted absentee but for the burden of finding a notary or two witnesses. This silence must be viewed against the background fact that this court in its footnote 15 had taken judicial notice of the fact. None of the triable issues delineated at the pretrial conference concerned this point. Moreover, at trial, the Hellums Class said nothing when the Roe Class did not present the testimony it now claims is missing. When, at the conclusion of the trial, the court invited counsel to submit oral argument or memoranda addressing the findings of fact and conclusions of law the court should reach, see Fed. R. Civ. P. 52(a), the Hellums Class stood silent. Under the

8

Roe I and Roe II establish law which is binding upon this panel. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc). Although the law established by the prior panel was announced in a preliminary injunction posture, nevertheless the principle of law adopted was clear. The facts established on remand in the district court were stronger in favor of the Roe Class than the prior panel could have expected. We therefore adhere to our prior conclusion that Roe has presented a claim for relief.

Assuming that to be true, the Hellums Class contends that, as a matter of comity, we should decline to exercise our jurisdiction so as not to interfere with Alabama's election process. If we dismissed the case, the Hellums Class represents, the Class would immediately move the Montgomery County Circuit Court, once again, to order the county election officials to amend their vote totals to include the contested ballots and the Secretary of State to include them in the election results for the office of chief justice.

Whether the Montgomery County Circuit Court has jurisdiction to grant the Hellums Class such relief is, as we noted in Roe I, highly doubtful. Roe I, 43 F.3d at 582. See Ala. Code § 17-15-6.[7] The Alabama Attorney General, appearing on behalf of

---

circumstances, we conclude that the Hellums Class waived any argument they may have had that the Roe Class had to establish the element in question.

[7] Section 17-15-6 provides:

the Secretary of State and the election officials of the State's sixty-seven counties (the Odom defendants), citing section 17-15-6, has moved the Montgomery County Circuit Court to dismiss Odom v. Bennett for want of subject matter jurisdiction.  But, putting this issue aside, directing the district court to dismiss this case would, as we observed in Roe I, leave the Roe Class without an adequate forum for the vindication of its federal constitutional claims.  Roe I, 43 F.3d at 582.

Finally, the Hellums Class urges us to give effect to the Supreme Court of Alabama's answer to the question we certified in Roe I:  that the envelopes enclosing absentee ballots need not bear the signature of either a notary public or two witnesses. What the Hellums Class ignores is that the Alabama Supreme Court, in answering our question, construed an Alabama statute; the court did not, and was not called upon to, decide whether the counting of the contested ballots cast in the November 8, 1994, general election--in the face of Ala. Code § 17-10-4 and in the face of a uniform state-wide practice of excluding such

---

> No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned, or affected . . . save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any officer or obeyed by any person . . . .

ballots[8]--infringed the Roe Class' constitutional rights.  <u>See</u> <u>Griffin v. Burns</u>, 570 F.2d 1065 (1st Cir. 1978).

In conclusion, we AFFIRM the judgment of the district court. The State defendants, who have not appealed and who stand ready to comply with the district court's injunction, are directed to comply with that injunction forthwith.

Because this litigation is now at an end, we direct the Clerk to issue the mandate <u>instanter</u>.

---

[8]  As noted <u>supra</u>, the Alabama Supreme Court, in answering our certified question, stated that, in the past, election officials in some counties included in their vote totals ballots such as those contested in this case.  In making this statement, the Alabama Supreme Court relied upon some affidavits the <u>Odom</u> plaintiffs attached to their motion for summary judgment in that case.  However, these affiants were not subjected to cross examination in <u>Odom</u>, nor did the opposing party have an opportunity to oppose or otherwise contest same.  After we remanded the instant case for trial, these affiants were examined under oath in the district court.  Their testimony in the district court--whether given in answer to interrogatories, on deposition, or at trial--was, contrary to their affidavits in <u>Odom</u>, that their counties never counted absentee ballots such as those at issue here or that they had no knowledge of how such ballots were treated.  Thus, the factual predicate for the Alabama Supreme Court's observations with respect to past practice was demonstrated in the district court to have been erroneous.