[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 15, 2006**
**THOMAS K. KAHN**
**CLERK**

_____

No. 04-16419

_____

D. C. Docket No. 00-02920-CV-WBH-1

THIS THAT AND THE OTHER GIFT AND TOBACCO, INC.,
d.b.a. This That & The Other,
CHRISTOPHER PREWETT,

Plaintiffs-Appellants,

versus

COBB COUNTY, GEORGIA,
PAUL FOSTER, in his official capacity as
Business License Division Manager
for Cobb County, Georgia,
THURBERT E. BAKER, in his official capacity
as Attorney General for the State of Georgia,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 15, 2006)**

Before BLACK, HULL and FARRIS[*], Circuit Judges.

PER CURIAM:

The plaintiffs, This That and The Other Gift and Tobacco, Incorporated, and Christopher Prewett, appeal the district court's grant of summary judgment in favor of the defendants on their First Amendment challenge to Georgia's obscenity statute, O.C.G.A. § 16-12-80. This is the second time this Court has considered the plaintiffs' challenge to this same statute. See This That and the Other Gift and Tobacco, Inc. v. Cobb County, Ga., 285 F.3d 1319 (11th Cir. 2002) ("This That I"). In This That I, this Court concluded that: (1) § 16-12-80 "contains a per se prohibition on advertising" related to sexual devices covered by statute; (2) "the ban contained in O.C.G.A. § 16-12-80 is more extensive than necessary"; and (3) "[l]ess onerous restrictions adequately would serve Georgia's interest, and the per se ban on advertising therefore violates the First Amendment." Id. at 1324.

On remand from that appeal, the district court revisited issues already decided in This That I, in violation of the law-of-the-case doctrine. Thus, after review and oral argument, we vacate and reverse the district court's order granting summary judgment for the defendants and remand this case with instructions for the district court to enter summary judgment in favor of the plaintiffs on their First

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

Amendment challenge to § 16-12-80.

## I. BACKGROUND

**A.     Georgia's Obscenity Statute**

As emphasized by the defendants' brief, the Georgia legislature enacted

O.C.G.A. § 16-12-80 with the "main purpose" of "advanc[ing] the government's

interest in promoting public morality."  Toward that end, § 16-12-80 regulates the

distribution of obscene material, in relevant part, as follows:

> (a) A person commits the offense of distributing obscene material when he sells, lends, rents, leases, gives, advertises, publishes, exhibits, or otherwise disseminates to any person any obscene material of any description . . . .
> . . .
> (c) Any device designed or marketed as useful primarily for the stimulation of human genital organs is obscene material under this Code section.
> . . .
> (e) It is an affirmative defense under this Code section that dissemination of the material was restricted to:
>
> > (1) A person associated with an institution of higher learning, either as a member of the faculty or a matriculated student, teaching or pursuing a course of study related to such material; or
> > (2) A person whose receipt of such material was authorized in writing by a licensed medical practitioner or psychiatrist.

O.C.G.A. § 16-12-80.

Thus, for the purposes of this case, section (a) makes it unlawful to sell,

lend, rent, lease, give, advertise, publish, exhibit, or otherwise disseminate obscene

3

material.  O.C.G.A. § 16-12-80(a).  Section (c) defines obscene material to include those "device[s] designed or marketed as useful primarily for the stimulation of human genital organs"; for example, vibrators and dildos.  O.C.G.A. § 16-12-80(c).  Section (e) provides an affirmative defense when the "dissemination" of otherwise obscene material was to higher education faculty and students or to persons with a valid prescription.  O.C.G.A. § 16-12-80(e).

## B.    Plaintiffs Open For Business

On April 24, 1998, the plaintiffs applied for various business licenses and permits in Cobb County, Georgia.  In submitting an application, the plaintiffs informed Cobb County that their business would be selling devices designed or marketed primarily for the stimulation of human genital organs.  Although Cobb County approved the plaintiffs' application, it later expressed concern that some of the devices sold by the plaintiffs violated Georgia's obscenity statute.  Despite expressing concern, Cobb County subsequently renewed the plaintiffs' licenses and permits in 1999 and 2000.

In early 2000, Cobb County threatened the plaintiffs with criminal prosecution and adverse administrative action for allegedly violating Georgia's obscenity statute.  On June 25, 2000, the plaintiffs stopped selling sexual devices such as vibrators and dildos.

4

**A.	Plaintiffs' First Motion for a Preliminary Injunction**

Plaintiffs filed suit and sought preliminary injunctive relief preventing Cobb County from enforcing Georgia's obscenity statute.  Plaintiffs asserted, in part, that Georgia's obscenity statute banned commercial speech in violation of the First Amendment.  Specifically, plaintiffs asserted that O.C.G.A. § 16-12-80's complete ban on advertising violated the four-prong test in <u>Central Husdon Gas & Elec. Corp. v. Public Serv. Comm'n</u>, 447 U.S. 557, 566, 100 S. Ct. 2343, 2351 (1980). Courts use the four-prong test in <u>Central Hudson</u> to determine if commercial speech is protected by the First Amendment.  Specifically, a court must determine: (1) whether the speech concerns lawful activity and is not misleading; (2) whether the regulation serves a substantial governmental interest; (3) whether the regulation directly and materially advances the state's asserted interest; and (4) whether the regulation is no more extensive than necessary to serve that interest.

In the district court, the plaintiffs stressed that Georgia's obscenity statute permitted the sale of sexual devices to higher education faculty and students and to persons with valid prescriptions (collectively, "legal consumers"), and, thus, "the government cannot presume all advertisements about sexual devices will be misleading."  Plaintiffs further argued that the complete ban on advertising was "overbroad" in that Georgia's obscenity statute banned all advertising, which

5

would include truthful advertising to medical practitioners and legal consumers. Finally, the plaintiffs asserted that Georgia's complete ban on advertising could not be saved even if the defendants had the power to ban the sale of sexual devices completely.[1] Essentially, the plaintiffs contended that once Georgia permitted the sale of sexual devices to certain consumers, it was required to permit the truthful, non-misleading, and targeted advertisement of sexual devices to those consumers as well as medical practitioners.

In response to the plaintiffs' motion for a preliminary injunction, the defendants characterized the plaintiffs' claims as challenging the state's ban on the advertising of sex devices. Specifically, defendants' brief stated, as follows: "Plaintiffs contend that O.G.C.A. (sic) § 16-12-80[] impermissibly infringes upon the rights guaranteed under the First and Fourteenth Amendments under the federal constitution by prohibiting the advertisement of sexual devices. They assert that this advertisement ban constitutes an unlawful prior restraint on the constitutional right of free speech."

In their reply to plaintiffs' argument, the defendants asserted that because a state may completely ban the sale of sexual devices outright, it does not violate the

---

[1] In Williams v. Att'y Gen. Of Ala., 378 F.3d 1232, 1250 (11th Cir. 2004), this Court concluded that there was no "constitutional right to privacy to cover the commercial distribution of sex toys."

Constitution to ban entirely the advertisement of those products. At no point did the defendants argue that § 16-12-80 could, or should, be construed to permit advertisements targeted at medical practitioners or legal consumers.

After conducting a hearing, the district court addressed the plaintiffs' motion for a preliminary injunction. Noting that the plaintiffs' motion was less than clear, the district court characterized the plaintiffs' motion as challenging "the prohibition of the advertising regarding devices that would lawfully be sold with a valid medical or psychological reason . . . ." The district court then addressed the plaintiffs' First Amendment challenge under the four-part Central Hudson test.

According to the district court, the plaintiffs' challenge to § 16-12-80 failed the Central Hudson test for three reasons. First, the district court concluded "that it is likely that any advertising of the sexual devices in the limited instances in which it would be lawful to sell those sexual devices . . . would mislead those that were not in possession of a valid authorization." In other words, the district court concluded that Georgia's complete ban on advertising did not violate the First Amendment because any potential advertisement to medical practitioners or legal consumers "would inherently be misleading to the other viewers of any such advertisement not in the possession of an authorization or without a personal knowledge of the law."

7

Second, the district court concluded that the complete ban on advertising in Georgia's obscenity statute "directly advances the government's interest in promoting public morality."

Third, the district court determined that the complete ban on advertising was "not more extensive than necessary." In fact, the district court went on to conclude that it "does not envision any manner in which this substantial government interest could be furthered in a less extensive manner."

Based on these conclusions, the district court determined that the plaintiffs had failed to demonstrate that they were likely to prevail on the merits of their First Amendment challenge to § 16-12-80, and, thus, the district court denied their motion for a preliminary injunction.

Plaintiffs appealed to this Court.

**B.     Plaintiffs' First Appeal**

On appeal, the plaintiffs asserted that the district court erroneously determined that they were not entitled to a preliminary injunction on their First Amendment claim. Specifically, the plaintiffs argued that the complete ban on advertising in § 16-12-80 violated their First Amendment rights to commercial speech under Central Hudson.

According to the plaintiffs, (1) no substantial government interest existed in

banning the advertisement of the sexual devices covered by § 16-12-80, (2) the complete ban on advertising such sexual devices did not directly and materially advance the government's interest in protecting public morality, and (3) the complete ban on the advertisement of such sexual devices was not narrowly tailored.

The defendants responded that the district court properly denied the plaintiffs' motion for a preliminary injunction. Specifically, the defendants, in a two-page response to the plaintiffs' First Amendment challenge, argued for the first time that Georgia's obscenity statute did not ban all advertising. Rather, according to the defendants, "advertising of [sexual] devices directed at persons lawfully entitled to use such devices . . . is not prohibited by the Georgia statute . . . ." Thus, the defendants argued that § 16-12-80 was constitutional because § 16-12-80(e) permitted lawful, non-misleading advertising targeted at legal consumers.

In its decision in the first appeal, this Court identified the four prerequisites to a preliminary injunction, as follows:

> the plaintiffs must demonstrate that (1) they have a substantial likelihood of success on the merits, (2) they will suffer irreparable injury unless the injunction issues, (3) the threatened injury to them outweighs the damage that the injunction would have on the opposing parties, and (4) if issued, the injunction would not disserve the public interest.

9

This That I, 285 F.3d at 1321-22 (citation omitted). This Court then noted that the district court had ruled on only the first prerequisite of a preliminary injunction. Thus, our prior opinion focused on only the legal issue of whether § 16-12-80 violated the First Amendment.

With regard to that legal issue, this Court addressed the plaintiffs' claim "that O.C.G.A. § 16-12-80 forbids the advertising of sexual devices and therefore bans commercial speech in violation of the First Amendment." This That I, 285 F.3d at 1323. We first considered "whether the speech at issue is misleading or relates to unlawful activity." Id.

According to this Court in the prior appeal, "[f]or commercial speech to fall within the protections of the First Amendment, it must concern lawful activity and not be misleading." Id. (citing Central Hudson, 447 U.S. at 566, 100 S. Ct. at 2351). This Court "disagree[d] with the district court's analysis of the first prong of Central Hudson," wherein the district court had concluded that advertising sex devices to legal consumers would be misleading to non-legal consumers. Id. This Court stated that it was "not convinced that an advertisement targeting [legal] consumers necessarily would be misleading . . . [nor] that an explanation of those persons entitled to purchase the device needs to be lengthy and complex." Id. at 1324. Essentially, this Court concluded that it was possible to craft a truthful, non-

10

misleading advertisement regarding the sexual devices targeted to legal consumers.[2]

As to the second and third prongs of <u>Central Hudson</u>, this Court assumed that Georgia had a substantial governmental interest in promoting public morality and that the complete ban on advertising advanced that interest.  <u>This That I</u>, 285 F.3d at 1324.  However, as to the fourth prong, this Court "disagree[d] with the district court's analysis of the last prong of <u>Central Hudson</u>," wherein the district court had determined that the regulation was no more extensive than necessary to serve the governmental interest.  <u>Id.</u>  This Court concluded that the complete ban on advertising in § 16-12-80 was "more extensive than necessary" and violated the First Amendment, stating

> we . . . conclude that the ban contained in O.C.G.A. § 16-12-80 is more extensive than necessary.  Even though sexual devices clearly are lawful under certain circumstances, the statute contains a *per se* prohibition on advertising related to such devices.  Distributors of sexual devices are forbidden unqualifiedly from advertising their products, even when the market they seek to reach consists of those consumers lawfully entitled to purchase those products.  Less onerous restrictions adequately would serve Georgia's interest, and the *per se* ban on advertising therefore violates the First Amendment.

<u>Id.</u> at 1324.

---

[2]We note that it is commonplace for advertisements about medical drugs or products to state a prescription is required in order to buy the drug or product lawfully.  Thus, medical products available only by prescription are routinely advertised in ways that do not mislead the public.

In summary, the prior panel in this case has already decided: (1) it is possible to craft a truthful, non-misleading advertisement targeted at the legal consumers of the devices in issue; (2) § 16-12-80 contains a complete ban on advertising; (3) the complete ban on advertising is "more extensive than necessary"; (4) "[l]ess onerous restrictions adequately would serve Georgia's interest"; and (5) "the *per se* ban on advertising . . . violates the First Amendment." Id.

Having determined that the complete ban on advertising in § 16-12-80 violated the First Amendment, this Court concluded that the district erred in finding that the plaintiffs had failed to show a substantial likelihood of success on the merits of their First Amendment challenge. Id. Thus, this Court remanded the case to the district court and directed it "to consider on remand whether the plaintiffs have satisfied the remaining prerequisites for a preliminary injunction." Id. Although there was a remand, this Court had already decided the purely legal question of whether § 16-12-80 violated the plaintiffs' First Amendment rights to commercial speech.[3]

---

[3]When compared to this Court's other decisions that reviewed a district court's ruling regarding a preliminary injunction, the precedential force of This That I becomes obvious. See Schiavo v. Schiavo, 403 F.3d 1223, 1226 (11th Cir. 2005) (stating that "an abuse of discretion standard recognizes there is a range of choice within which we will not reverse the district court even if we might have reached a different decision") (citations omitted); Revette v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 740 F.2d 892, 893 (11th Cir. 1984) ("Although there may be merit to these contentions, they present a sufficiently close question so that the

## C. Proceedings After Remand

On May 20, 2002, the district court ordered that the mandate from this Court become the judgment of the district court. On remand, the district court did not address the remaining prerequisites for a preliminary injunction. Rather, the district court again addressed the question of whether § 16-12-80 violated the plaintiffs' First Amendment rights. Although this Court had already concluded that § 16-12-80 contained a complete ban on advertising even to legal consumers and that this per se advertising ban violated the First Amendment, the district court revisited these issues. The district court ordered briefing on whether the advertising provision of § 16-12-80 could be severed in order to save the statute.[4]

The defendants submitted their brief on severability on August 23, 2002. According to the defendants, "the unconstitutional provision consisting of the term[] 'advertise'[] can be properly severed or stricken from the statute, leaving the remainder of the statute intact." Section 16-12-80(a) makes it unlawful when a person "sells, lends, rents, leases, gives, advertises, publishes, exhibits, or

_____

district court could probably have gone either way in its decision to a preliminary injunction. In such a case, there can be no abuse of discretion.").

[4]In that regard, on August 7, 2002, the district court entered an order stating: "[b]oth parties . . . have brought it to the Court's attention that the interest of judicial economy would be served by the Court's adjudication of the issue of severability of the advertising provision of O.C.G.A. § 16-12-80 before the parties proceed with any other matters." Thus, the district court ordered the parties to address the "severability issue." It is unclear how and when the parties brought this severability issue to the district court's attention.

13

otherwise disseminates" any obscene material. Essentially, the defendants argued that if the district court removed the term "advertises" from § 16-12-80(a), the statute would be constitutional. At no point did the defendants reassert that advertising targeted at medical practitioners or legal consumers was already permitted under § 16-12-80 or that "dissemination" as used in the affirmative defense in § 16-12-80(e) could, or should, be construed to include advertising.

The plaintiffs then filed their response regarding the issue of severability. Although not a picture of clarity, the plaintiffs' response argued that severing the term "advertise" from section (a) would not cure the constitutional problem because "it is the *act* of advertising – not the *word* 'advertises' – which is protected by the First Amendment." According to the plaintiffs, the prohibitions against publishing or exhibiting materials in section (a) could reasonably be read to affect their First Amendment right to advertise to legal consumers. The plaintiffs further asserted that it was unclear how the Georgia legislature would respond given the "infirmities" in § 16-12-80. The plaintiffs argued that because there were different options available to the Georgia legislature, it was improper for a federal district court to select among them.

The defendants filed a reply brief and characterized this Court's prior decision in This That I as follows:

14

The Eleventh Circuit held that the per se ban on advertising *as applied to sexual devices* violated the First Amendment because advertisements targeting consumers of "lawful" sexual devices as provided in O.C.G.A. § 16-12-80(e) would not be misleading. The Court also held that the per se prohibition on advertising relating to sexual devices was too extensive because the prohibition failed to take into account sexual devices that could be lawfully distributed to certain consumers.

Again, the defendants argued that "there are no countervailing considerations that would prohibit severance and/or partial invalidation of the term advertise as applied to sexual devices." At no point did the defendants reassert that advertising targeted at medical practitioners or legal consumers was already permitted under Georgia's obscenity statute or that "dissemination" as used in the affirmative defense in § 16-12-80(e) could, or should, be construed to include advertising.

After briefing, the district court on remand entered an order once again denying the plaintiffs' motion for a preliminary injunction. In that order, the district court stated that "[t]he Eleventh Circuit opinion does not address whether the statute may be saved through severance or the imposition of a limiting construction." The district court first concluded that § 16-12-80 could not be saved by severing only the term "advertises" from subsection (a) of § 16-12-80, explaining that

> [t]o fully protect the First Amendment right to advertise, as identified by the Eleventh Circuit, the Court would have to sever other terms in the statute that overlap with the term 'advertise.' Even if the statute

15

could be severed in such an extensive manner, the Court cannot be reasonably certain that the legislature would have enacted an obscenity statute that allows distributors to advertise expressive obscene material, particularly where the statute prohibits the sale of such material.

However, the district court reasoned that "[a]s an alternative to severance, the Court may avoid invalidating the statute in its entirety if the statute is 'readily susceptible' to a limiting construction."

According to the district court, "the plain language of the statute shows that it is readily susceptible to a limiting construction." The district court looked to the affirmative defense in subsection (e) of § 16-12-80 and noted that the Georgia legislature in § 16-12-80(e) had permitted the sale of sexual devices to particular consumers. The district court reasoned that "the Georgia legislature has, in effect, provided the Court with the necessary guidance for limiting the statute's advertising ban in a way that comports with the First Amendment." The district court determined that "[a] clear line may be drawn between advertising directed at the general public and advertising directed at lawful consumers." The district court concluded that, in the absence of any legislative intent to the contrary, Georgia's obscenity "statute should be invalidated only insofar as it prohibits the advertising of sexual devices targeted at the lawful consumers identified in subsection (e)." The district court, in effect, interpreted § 16-12-80(e) to include the term

16

advertising in that affirmative defense.[5]

Focusing on only the legal issue as to the construction of § 16-12-80, the district court ruled that the plaintiffs did not have a substantial likelihood of success on the merits regarding the constitutionality "of the statute as it has now been construed." The district court once again addressed only the legal issue as to whether § 16-12-80 violated the First Amendment, and never addressed the other prerequisites for a preliminary injunction. The district court again denied the plaintiffs' motion for a preliminary injunction, and subsequently granted the defendants' motion for summary judgment.

Plaintiffs again appeals.

## II. DISCUSSION

We first examine the law-of-the-case doctrine and then whether on remand the district court erred in revisiting whether § 16-12-80 violated the First Amendment.

### A. Law-of-the-Case Doctrine

"Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." Heathcoat v. Potts, 905 F.2d 367,

_____

[5]While the district court ordered the parties to brief the severability issue, there was no new briefing on this limiting construction issue.

370 (11th Cir.1990) (internal quotation marks and citation omitted). Furthermore, the law-of-the-case doctrine bars relitigation of issues that were decided either explicitly or by necessary implication. See Schiavo v. Schiavo, 403 F.3d 1289, 1291 (11th Cir. 2005) ("The [law-of-the-case] doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal."); Klay v. All Defendants, 389 F.3d 1191, 1198 (11th Cir. 2004) ("Realizing that a prior decision is law of the case as to matters decided explicitly and by necessary implication, we find that our prior affirmation of the district court constitutes law of the case here . . . ."), cert. denied, 125 S. Ct. 2523 (2005); A.A. Profiles, Inc. v. City of Fort Lauderdale, 253 F.3d 576, 582 (11th Cir. 2001) ("Generally, the law of the case doctrine requires a court to follow what has been explicitly or by necessary implication decided by a prior appellate decision."); In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) ("While the law of the case does not bar litigation of issues which might have been decided but were not, it does require a court to follow what has been decided explicitly, as well as by necessary implication, in an earlier proceeding.") (internal marks and citation omitted). The doctrine's central purposes include bringing an end to litigation, protecting against the agitation of settled issues, and assuring that lower courts obey appellate orders. See United States v. Williams, 728 F.2d 1402, 1406 (11th

18

Cir. 1984).

When a court decides a question of law, the only means by which the law-of-the-case doctrine can be overcome is if: (1) since the prior decision, "new and substantially different evidence is produced, or there has been a change in the controlling authority"; or (2) "the prior decision was clearly erroneous and would result in a manifest injustice." Oladeinde v. City of Birmingham, 230 F.3d 1275, 1288 (11th Cir. 2000) (citations omitted).

**B.     The Law of This Case**

As outlined above, the prior panel in this case expressly determined that § 16-12-80 banned all advertising of the sexual devices in issue, that this per se ban on advertising in § 16-12-80 "is more extensive than necessary," and that it violated the plaintiffs' First Amendment rights. This That I, 285 F.3d at 1324. Indeed, in the prior appeal, Cobb County argued that § 16-12-80(e) of Georgia's obscenity statute permitted the truthful, non-misleading, and targeted advertisement of sexual devices to legal consumers. However, the prior panel rejected that reading and concluded that "[e]ven though sexual devices clearly are lawful under certain circumstances, the statute contains a *per se* prohibition on advertising related to such devices. Distributors of sexual devices are forbidden unqualifiedly from advertising their products, even when the market they seek to

19

reach consists of those consumers lawfully entitled to purchase those products."

Id. (emphasis added).

In reaching this conclusion, the prior panel, at least by implication, determined that § 16-12-80 could not be saved by giving the statute the more limiting construction used by the district court. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817, 108 S. Ct. 2166, 2178 (1988) ("That the Federal Circuit did not explicate its rationale is irrelevant, for the law of the case turns on whether a court previously decided upon a rule of law – which the Federal Circuit necessarily did – not on whether, or how well, it explained the decision.") (internal marks and alteration omitted); United States v. Jordan, 429 F.3d 1032, 1035 (11th Cir. 2005) ("We did not address that argument in so many words, or in any words for that matter, but we did reject it 'by necessary implication,' which is enough under our decisions to bring the law of the case doctrine to bear in this appeal.") (citations omitted). Furthermore, none of the exceptions discussed above to the law-of-the-case doctrine apply here. Consequently, the district court on remand violated the law-of-the-case doctrine when it revisited the issue of whether § 16-12-80 violated the plaintiffs' First Amendment rights and concluded a clear line could be drawn in the statute between advertising directed at the general public

as opposed to legal consumers.[6]

The fact that the earlier panel opinion in this case was decided during the preliminary injunction stage does not impact the applicability of the law-of-the-case doctrine in this case. Rather, the prior panel clearly determined that § 16-12-80 banned all advertising to even legal consumers, and, thus, violated the plaintiffs' First Amendment rights. As such, this Court's prior legal conclusion was binding on the district court, just as it is now binding on us. See Roe v. State of Alabama, 68 F.3d 404, 408 (11th Cir. 1995) (Applying the law of the case and stating that "[a]lthough the law established by the prior panel was announced in a preliminary injunction posture, . . . the principle of law adopted was clear"); Nat'l Airlines, Inc. v. Int'l Assoc. of Machinists & Aerospace Workers, 430 F.2d 957, 960 (5th Cir. 1970) (Recognizing that the law-of-the-case doctrine applies to preliminary injunctions and stating that "[t]he exception to law of the case where

_____

[6]In addition to the district court's limiting construction, there is also a separate argument on appeal that the term "dissemination" as used in the affirmative defense in § 16-12-80(e) could be construed to encompass all prohibited conduct in § 16-12-80(a). However, a prior panel of this Court has necessarily rejected that reading as well. See This That I, 285 F.3d at 1324. Furthermore, this case illustrates that rewriting of statutes should be left to the Georgia legislature. If the Georgia legislature elects to enact another obscenity statute, it may elect to protect commercial speech to legal consumers by expanding subsection (e) to include all the terms in subsection (a). However, it may also elect to ban the sale and advertising of certain devices to all consumers. We offer no opinion as to the constitutionality of either approach. All we conclude is that the district court, and this Court, are bound by our prior panel's conclusion that, as written, § 16-12-80 is more extensive than necessary and violates the plaintiffs' First Amendment rights to commercial speech.

21

evidence on a subsequent trial is substantially different is inapplicable where by the prior appeal the issue is not left open for decision") (internal punctuation and citations omitted).[7]

Because a prior panel in this case has already determined that § 16-12-80 unconstitutionally infringes upon the plaintiffs' First Amendment rights, we remand this case to the district court to enter summary judgment in favor of the plaintiffs. Because we are bound by the law-of-the-case doctrine, we need not consider whether the type of limiting construction the district court gave to § 16-12-80 is a proper construction of that state statute.[8]

REVERSED AND REMANDED WITH INSTRUCTIONS.

---

[7]See Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[8]The plaintiffs also argue that § 16-12-80 is unconstitutionally vague and that Cobb County has engaged in selective prosecution. After review, we conclude these claims are without merit. Instead, § 16-12-80 violates the First Amendment solely on the basis determined by the prior panel in This That I.