[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10210

Non-Argument Calendar

_____

LINDA TRIMBLE,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:21-cv-01672-ACA

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

This case involves the Social Security Administration's ("SSA") denial of Linda Trimble's claim for supplemental security income ("SSI") disability benefits for the time period of September 15, 2015, to February 2, 2017. The Administrative Law Judge ("ALJ") for the SSA initially determined that Trimble was disabled, with a disability onset date of February 2, 2017, rather than September 15, 2015, as Trimble alleged in her application for benefits. On appeal, the district court remanded the case to the ALJ because the district court determined that there was insufficient evidence supporting the ALJ's determination of Trimble's disability onset date. On remand, after hearing additional medical testimony, the ALJ again found that February 2, 2017, was the appropriate onset date. The district court affirmed the ALJ's decision. Trimble now argues that the ALJ violated the district court's mandate and the law of the case doctrine by determining that her disability onset date was February 2, 2017. She also argues that the ALJ's finding was not supported by substantial evidence. After review, we affirm.

## I.    Background

In February 2015, Trimble applied for SSI disability benefits with an alleged onset date of July 1, 2014. Although it is unclear from the record exactly what happened with that application, it appears that while it was pending, Trimble filed another

application for SSI benefits in September 2015, alleging a disability onset date of September 15, 2015—this application is the focus of this appeal.  In support of her application, Trimble submitted a disability report in which she indicated that "lower back pain" and "nerve damage from [her] back to [her] feet" limited her ability to work.  She also submitted a function report in which she stated that her condition made it difficult to sleep well at night and to get out of bed.  The report also stated that she needed help dressing and bathing herself; that she could not stand too long because of swelling in her feet; and that her condition affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs.  The SSA denied her claims, so she requested a hearing before an ALJ.

In February 2017, the ALJ conducted a hearing on Trimble's claim.  Trimble testified that she was in a lot of pain, was forced to use a walker to ambulate, and she could barely sit or stand without pain.

The medical evidence before the ALJ was as follows.  In 2008, Trimble saw Dr. Norman Rahn to report a lower back injury. Dr. Rahn performed an x-ray and noted that Trimble's lumbar spine appeared normal.  In 2014, Dr. James White, a neurosurgeon, diagnosed Trimble with a herniated lumbar 4 disc with stenosis and conducted surgery.  After the surgery, Trimble reported to Dr. White that she was having soreness in her back and leg, and a burning pain in her foot.

On April 8, 2015, Trimble visited Dr. Zakir Khan for her social security disability determination exam.    Dr. Khan

determined that Trimble had an ability to perform fine motor skills and to stand, carry, handle objects, hear, speak, and travel, but that her ability to sit, walk or lift for an extended period of time may be impaired. One day later, Dr. Marcus Whitman evaluated Trimble and determined that Trimble was able to perform light work and was not disabled.[1]

In September 2015, Trimble began seeing a different Neurosurgeon, Dr. Terry Andrade. She elected to have another back surgery, which was conducted in October 2015. She continued to report pain after the surgery. In July and August 2016, Trimble visited Dr. Jeremy Barlow, who administered epidural injections. She then visited Dr. Luc Frenette who administered additional epidurals. The epidurals only provided temporary relief. In January 2017, Dr. Frenette noted that Trimble had some tenderness, showed visible signs of pain, and that she required some assistance to rise from a seated position. However, Dr. Frenette also noted that Trimble had normal station and gait, normal movement in all extremities, and normal flexion and extension.

On February 2, 2017, Trimble visited Dr. Jarrod Warren for a medical evaluation. Dr. Warren noted that "[g]iven [Trimble's] history of gradual worsening symptoms, as well as lack of response to surgical interventions, it is anticipated that her back pain will continue to worsen." Dr. Warren also completed a physical

---

[1] Dr. Khan's and Dr. Whitman's evaluations were conducted in connection with Trimble's February 2015 application for benefits.

capacities evaluation in which he noted that Trimble could sit upright in a standard chair for 15-30 minutes; could stand for 15 minutes; would be lying down or sleeping for 6-7 hours of an 8-hour day; would be off-task for 75% of an 8-hour day; and would be likely to miss 30 days in a 30 day period due to her physical symptoms. He also noted that these limitations dated back to September 11, 2015.

Additionally, at the hearing before the ALJ, a vocational expert, Dr. Jewell Euto, testified as to Trimble's work history, which included past work as a packager (a medium-exertion unskilled job); a cleaner (a light-exertion unskilled job); and a poultry hanger (a medium-exertion unskilled job). The ALJ then asked Dr. Euto about the work limitations of two hypothetical individuals. The first hypothetical individual could perform light exertion, but not climb ladders, ropes, or scaffolds, could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, and who would need the use of a walker while ambulating. The second hypothetical individual had no limitation on lifting and carrying but could only stand up to 15 minutes at a time, sit between 15 to 30 minutes at a time, perform work activity for 15 to 30 minutes at a time, and would need to lie down or be seated between 6 to 7 hours in an 8-hour day. Dr. Euto stated that the first individual would only be able to perform sedentary work—not any of the three jobs identified in Trimble's work experience. As to the second individual, Dr. Euto stated that no work was available.

In January 2018, the ALJ issued a partially favorable decision to Trimble, granting disability benefits with an onset date of February 2, 2017.   The ALJ applied the five step-sequential approach as required by 20 C.F.R. § 416.920(a)(4).  *See* 20 C.F.R. § 416.920(a)(4).  At step one, the ALJ determined that Trimble had not engaged in substantial gainful activity since September 15, 2015.  At step two, the ALJ concluded that Trimble had two severe impairments: lumbar degenerative disc disease and peripheral neuropathy.   At step three, the ALJ concluded that Trimble's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  At step four, the ALJ concluded that, prior to February 2, 2017, Trimble had the ability to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b).[2]  At step five, the ALJ concluded that, beginning on February 2, 2017, there are no jobs that existed in significant numbers in the national economy that Trimble could perform.

---

[2] In reaching the conclusion, at step four, that Trimble could perform light work prior to February 2, 2017, the ALJ considered the medical evidence and Trimble's symptoms.  The ALJ concluded that Trimble's statements about the intensity, persistence, and limiting effects of her impairments were inconsistent with the objective medical evidence.  The ALJ gave good weight to Dr. Khan's report, which did not specifically define any limitations for Trimble.  And the ALJ gave significant weight to Dr. Warren's report in reaching the conclusion that, as of February 2, 2017, there were no jobs in significant numbers in the national economy for Trimble to perform.

Thus, the ALJ determined that Trimble was disabled beginning on February 2, 2017, and entitled to benefits.

Trimble appealed the ALJ's decision to the SSA's Appeals Council ("AC"), arguing that the ALJ's finding that she was not disabled before February 2, 2017, was not based on substantial evidence and that the ALJ failed to apply appropriate legal standards. The AC denied Trimble's request for review.

Trimble then appealed to the district court. The district court agreed that the ALJ failed to explain his reasoning for determining that Trimble's disability onset date was February 2, 2017—the date of Dr. Warren's medical evaluation—and not before then as alleged by Trimble in her application. Because of the progressive nature of Trimble's condition, the district court concluded that the ALJ needed to discuss why the onset date was not sooner. The district court remanded the case to the SSA to make an onset date determination based on the advice of a medical expert. The AC sent the case back to the ALJ, affirming the ALJ's initial finding that Trimble was disabled beginning February 2, 2017, and entitled to benefits as of that date, but it ordered the ALJ to determine whether she was disabled before that date.

The ALJ held its second hearing on October 2, 2020. Dr. Jaslow, a medical expert, testified that there were no objective reasons for Trimble's alleged limitations between September 2015 and February 2, 2017. He stated that Trimble had the capacity to lift 15 pounds frequently and 25 pounds occasionally; could stand and walk six hours a day; could sit for seven hours a day with

breaks; could frequently climb ramps, stairs, and ladders; and could occasionally stoop, kneel, crouch, and crawl. Dr. Jaslow based his conclusion, in part, on the fact that, if Trimble was truly unable to walk as much as she said she was, she would be experiencing severe disuse atrophy in her lower extremities, which was contrary to multiple examinations showing her ambulation was normal. Dr. Jaslow further testified that, based on an Electromyography test that was conducted in 2019, he believed that polyneuropathy caused the pain in Trimble's lower extremities rather than the spinal disorder. And because Trimble had no motor weakness, this was not a severe impairment.

A vocational expert, Dr. Sabrina Singleton, testified. The ALJ asked Dr. Singleton to evaluate the work limitations of a hypothetical individual who could lift and carry 25 pounds occasionally, could lift and carry 15 pounds frequently, could stand or walk in combination for a total of six hours in an eight-hour day, and could stand for a total of seven hours in an eight-hour day. Dr. Singleton concluded that such an individual could perform work as a meat packer and a poultry hanger—two jobs that Trimble had previously held—as well as three light exertion jobs that she had not previously performed.

In December 2020, the ALJ denied Trimble's application, concluding that she was not disabled from September 15, 2015, to February 2, 2017. The ALJ conducted the same five-step analysis that it conducted in its 2017 denial. The ALJ concluded that, based on the medical evidence and Trimble's symptoms for the time

period in question, Trimble had the capacity to perform medium work as defined in §§ 404.1567(c) and 416.967(c) with some minor limitations.  Thus, the ALJ concluded that Trimble was capable of making a successful adjustment to other work that existed in significant numbers in the national economy from September 15, 2015, through February 2, 2017.  Consequently, the ALJ determined that she was not disabled during the referenced time period, and he denied Trimble's claim.

In reaching his conclusion, the ALJ afforded various weight to the different medical evidence. The ALJ afforded some weight to Dr. Whitman's evaluation, which concluded that Trimble would be able to perform work at the light exertional level.  The ALJ afforded good weight to Dr. Khan's April 2015 evaluation, which stated that Trimble would be able to stand, carry, and handle objects but may have difficulty sitting, walking, or lifting for extended periods of time.  The ALJ afforded "lesser weight" to Dr. Warren's opinion of Trimble's functional limitations because Dr. Warren was not an orthopedic surgeon and his opinion was inconsistent with the medical findings.  The ALJ afforded significant weight to Dr. Jaslow's testimony because Dr. Jaslow considered the evidence in its entirety, was a board-certified orthopedic surgeon, and his testimony was subject to cross-examination in a recorded hearing.

Trimble appealed the ALJ's decision to the AC, which again denied her appeal.  Trimble then filed a complaint in federal district court against the Commissioner of the SSA, alleging that the ALJ's

denial of disability benefits to her was not supported by substantial evidence. Further, she argued that the ALJ's decision violated the law of the case doctrine along with the mandates of the AC and the district court. The district court disagreed and affirmed the ALJ's decision. Trimble appealed.

## II.    DISCUSSION

On appeal, Trimble argues that the ALJ's decision violated the mandate of the district court and the law of the case doctrine. Trimble also argues that the ALJ's finding that the disability onset date was February 2, 2017 (meaning that she was not disabled prior to that date), was not supported by substantial evidence. We address each argument in turn and conclude (1) that the ALJ did not violate the mandate of the district court or the law of the case doctrine and (2) that substantial evidence supports the ALJ's finding of a disability onset date of February 2, 2017.

*A. Whether the ALJ's decision violated the mandate of the district court or the law of the case doctrine.*

Trimble argues that "the law of the case consists of the findings and conclusions of the [d]istrict [c]ourt [on her first appeal], the [AC's] remand order, and the non-vacated portion of the ALJ's [first] decision." Specifically, she states that the following findings are the law of the case: (1) Trimble was disabled as of February 2, 2017; (2) her condition was constantly deteriorating; and (3) there is nothing in the record indicating that her condition worsened to the point of being a disability on February 2, 2017, as opposed to an earlier date. Trimble argues that the ALJ violated

the district court's mandate and the law of the case doctrine by determining an onset date of February 2, 2017, without explaining why that date was correct as opposed to an earlier date.

We review whether the ALJ has complied with a remand order and the application of the law of the case doctrine *de novo*. *See Sullivan v. Hudson*, 490 U.S. 877, 885–86 (1989); *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005). Under the law of the case doctrine, an appellate court's findings of fact and conclusions of law are binding in all subsequent proceedings in the same case, whether in the trial court or on a later appeal. *This That And The Other Gift And Tobacco, Inc. v. Cobb Cnty.*, 439 F.3d 1275, 1283 (11th Cir. 2006). The mandate rule, a specific application of the law of the case doctrine, requires compliance on remand with the appellate court's instructions and forecloses relitigation of any issue that the appellate court expressly or impliedly decided. *See Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1299 (11th Cir. 2018). "Deviation from the [district] court's remand order in the subsequent administrative proceedings is [] legal error, subject to reversal on further judicial review." *Sullivan*, 490 U.S. at 886. However, the ALJ has a basic obligation to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). We have not decided whether the law of the case or mandate rules apply in social security cases. *See Weidner v. Comm'r of Soc. Sec.*, 81 F.4th 1341, 1345 (11th Cir. 2023).

Here, assuming that the mandate rule and law of the case doctrine apply to social security cases, the ALJ did not violate

either.   Trimble misreads the district court's remand order as necessarily requiring the ALJ to find her disabled at some point prior to February 2, 2017.  In Trimble's view, the remand required the ALJ to determine *when* she became disabled before February 2, 2017, not *if* she became disabled before February 2, 2017.  But the express mandate of the district court was for "the ALJ to make an onset date determination based on the advice of a medical expert." Indeed, as the district court correctly pointed out, the remand order "did not expressly or impliedly require the ALJ to assign a different onset date—only that he make the onset date determination with the assistance of a medical expert."  The ALJ complied with this mandate by consulting Dr. Jaslow.

With respect to Trimble's law of the case argument more generally, Trimble fails to show how the ALJ violated this doctrine. She claims the district court's statement in her first appeal that the medical records did not clearly indicate that her condition worsened on February 2, 2017, as opposed to some earlier date, is law of the case.  She is incorrect.  In context, the district court was simply explaining the error that the ALJ needed to correct on remand to satisfy the ALJ's obligation to develop a full and fair record.  And with the supplement of Dr. Jaslow's testimony, the record was developed sufficiently for the ALJ's determination that she was not disabled before February 2, 2017.  Nor are we persuaded by Trimble's argument that the ALJ departed from the district court's finding that Trimble's condition was constantly deteriorating.  This finding is not mutually exclusive with the ALJ's

determination that Trimble's condition did not worsen to the point of a disability until February 2, 2017. [3]

*B. Whether the ALJ's implied finding that Trimble's disability onset date was February 2, 2017, is supported by substantial evidence.*

Trimble also argues that the ALJ's finding that her disability onset date was February 2, 2017, is not supported by substantial evidence. She argues that Dr. Jaslow's medical testimony was flawed because he relied on medical records outside of the relevant time frame. Thus, she argues his testimony should not have overridden Dr. Warren's medical evaluation indicating that she was disabled in September 2015.

In a social security case, we review the agency's legal conclusions *de novo*, and its factual findings by determining whether they are supported by substantial evidence. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). When an ALJ denies benefits and the AC

---

[3] Trimble also argues that the ALJ violated the law of the case doctrine by making findings as to her impairment through February 2, 2017, instead of through February 1, 2017. The SSA argues that this was a scrivener's error. We agree. While at one point the ALJ did state that Trimble was not under a disability through February 2, 2017, the ALJ then correctly stated, at the end of the opinion, that Trimble was not under a disability through February 1, 2017.

denies review, we review the ALJ's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178.

To determine whether a claimant is disabled, the ALJ considers medical opinions from acceptable medical sources, including physicians. 20 C.F.R. §§ 416.902(a)(1), 416.913(a)(2). A medical opinion is a statement from a medical source about what a claimant can do despite her impairments and whether she has an impairment-related limitation. *Id.* § 416.913(a)(2). For claims filed before March 27, 2017, the SSA is required to give a treating physician's opinion more weight unless there was good cause to discount it. 20 C.F.R. § 404.1527(d)(2); *see* 20 C.F.R. § 404.1527(c)(2).

An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. And an ALJ may not improperly substitute his judgment of the claimant's condition for that of the medical and vocational experts. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). In addition to determining that an individual is disabled, the ALJ must also establish the onset date of disability, by consulting the applicant's allegations, work history, and medical and other evidence. SSR 18-1p.

Here, substantial evidence supported the ALJ's finding that Trimble was not disabled from September 15, 2015, through

February 1, 2017.  As an initial matter, because Trimble's claim was filed before March 27, 2017, the ALJ was required to give Trimble's treating physician's evaluation more weight unless there was good cause to discount it.  § 404.1527(d)(2); *see* § 404.1527(c)(2).  But Trimble's treating physicians gave inconsistent evaluations and as a result, the ALJ afforded their opinions less weight.

For example, Dr. Warren's evaluation on February 2, 2017, indicated that Trimble had a much more severe medical condition than any of Trimble's other treating physicians had diagnosed her with over the preceding years.  While Dr. Warren stated that Trimble's condition required her to be lying down or sleeping for 6-7 hours of an 8-hour day, Dr. Frenette's evaluation just a month earlier stated that Trimble had normal station and gait, normal movement in all extremities, and normal flexion and extension.  As Dr. Jaslow pointed out, if Trimble was walking as little as she had indicated, she would have had severe disuse atrophy in her lower extremities.  And none of the medical reports were indicative of disuse atrophy.  Thus, Dr. Warren's evaluation that Trimble was disabled as early as September 15, 2015, was discounted by the fact that his evaluation was inconsistent with the objective medical evaluations for the period prior to his evaluation on February 2, 2017.  The ALJ further discounted Dr. Warren's evaluation based on the fact that he was not an orthopedic surgeon.

On the other hand, the ALJ was justified in giving significant weight to Dr. Jaslow's opinion.  Dr. Jaslow was an orthopedic surgeon and was able to consider the full medical record, and was

appointed on remand for the sole purpose of assisting the ALJ in determining the proper onset date. Dr. Jaslow's testimony is not discounted by the fact that he relied on medical opinions outside of the relevant time period, as we have recognized that such opinions may be informative of the condition of the individual during the relevant time period. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1322 (11th Cir. 2015).

Overall, the ALJ had more than a scintilla of evidence to support his finding that Trimble was not disabled prior to February 2, 2017. *See Winschel*, 631 F.3d at 1178. Thus, his determination was supported by substantial evidence. Accordingly, we affirm.

**AFFIRMED.**