[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

No. 04-10514

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 27, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 02-60012-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL JOHNSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(February 27, 2006)**

Before EDMONDSON, Chief Judge, BARKETT, Circuit Judge, and HUNT[*],
Senior District Judge.

PER CURIAM:

---

[*]Honorable Willis B. Hunt, Jr., United States Senior District Judge for the Northern District
of Georgia, sitting by designation.

Paul Johnson appeals his conviction for conspiring to and committing securities fraud in violation of 18 U.S.C. § 371 and 15 U.S.C. § 78j(b), perjury in violation of 18 U.S.C. §§ 1623(a), and conspiring to and committing money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h), 1956(a)(2)(B)(i) and 2, and 1957.

The evidence produced at trial established that Johnson formed Link Express Delivery Solutions ("LEDS") in October 1997, a package delivery service describing itself as a competitor of Federal Express. Johnson, an enterprising man, served as the president, majority shareholder, chairman, and chief executive officer of the company. At the same time that he incorporated LEDS, Johnson also incorporated J&J Business Management and put that company in the name of his mother, Caterina Johnson.

This case involves an extensive capital investment scheme whereby Johnson procured over $15 million in capital from hundreds of unwary investors through five private stock offerings between 1997 and 2000. Contrary to his representations to investors that their investments would be used exclusively for financing and operating LEDS, Johnson absconded with over $5.5 million, which he used to purchase homes, boats, cars, and plastic surgery for various girlfriends, as well as to fund his extensive interest in gambling. He also diverted money from LEDS to fund a nightclub called

Bacchanalia that folded three weeks after opening for defaulting on its lease payments. Johnson eventually dissolved LEDS and notified investors that Link Worldwide Logistics ("LWL"), supposedly LEDS' parent company, had taken its place. LWL operated under the same business plan as LEDS, and Johnson once again was the president, chief executive officer, chairman, and majority shareholder. He thereafter convinced investors either to convert their LEDS shares to LWL shares for a fee of five dollars per share, or to exchange their LEDS shares for LWL shares without fees, contingent upon their investment of additional money into LWL. Using these new investor funds in LWL, Johnson purchased Pony Express, an express delivery service, out of bankruptcy after which it also started to fail as a result of Johnson pilfering large amounts of cash from the company up until the point of his arrest in 2002.

On appeal, Johnson challenges the sufficiency of the evidence to support his convictions, certain evidentiary rulings by the district court, and the denial of his motion to suppress evidence and his motion for continuance. Johnson also contends that the district court incorrectly instructed the jury and that his sentence was improper. Having reviewed the record, we find more than sufficient evidence to support Johnson's convictions for perjury and securities fraud. We further find no reversible error in the district court's jury instructions, evidentiary rulings and denial

3

of Johnson's motion to suppress and motion for continuance. Finally, after due consideration, we affirm the money laundering convictions set forth in Counts 18-21 of the superseding indictment; however, for the reasons set forth below, we vacate Johnson's money laundering convictions for Counts 22-28.

## Money Laundering

With respect to the money laundering charges set forth in Counts 18-28 of the superseding indictment, the jury convicted Johnson of laundering more than $10,000 in proceeds from securities fraud in violation of 18 U.S.C. § 1957 (Counts 18-21), laundering the proceeds of securities fraud with the intent to conceal such unlawful proceeds by transferring them outside of the United States in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i) and 2 (Counts 22-27), and conspiring to launder the proceeds of securities fraud with the intent to promote such unlawful activity in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h) (Count 28).

Johnson submits that the evidence was insufficient to sustain his convictions for money laundering. Sufficiency of the evidence is an issue that we review *de novo* to determine whether "a reasonable jury, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government could find the defendant[] guilty as charged beyond a reasonable doubt." United States v.

4

<u>Williamson</u>, 339 F.3d 1295, 1299 (11th Cir. 2003) (internal quotations omitted). We address the different money laundering provisions separately.

<u>18 U.S.C. § 1957</u>

To obtain a conviction on a § 1957 charge, the government bears the burden of proving beyond a reasonable doubt that Johnson "knowingly engaged or attempted to engage in a monetary transaction in criminally derived property that is of value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957; <u>see also</u>, <u>United States v. Nolan</u>, 223 F.3d 1311, 1315 (11th Cir. 2000). A "monetary transaction" includes "the deposit, withdrawal, transfer, or exchange, . . . of funds or a monetary instrument by, through, or to a financial institution . . . ." 18 U.S.C. § 1957(f)(1). The term "specified unlawful activity" means any act or activity constituting an offense under 18 U.S.C. § 1961(1). 18 U.S.C. § 1956(c)(7)(A). Section 1961(1)(D) includes "any offense involving . . . fraud in the sale of securities."

With respect to his § 1957 convictions (Counts 18-21), Johnson argues that the mere receipt of funds raised from his private stock offerings does not amount to money laundering and that the government failed to establish that he engaged in financial transactions involving criminally derived proceeds. After reviewing the

5

record, we find the evidence presented at trial more than sufficient to support Johnson's § 1957 convictions. Johnson did more than merely "receive" the proceeds from his bogus stock offerings. The evidence at trial established that Johnson knowingly engaged in securities fraud (i.e., a specified unlawful activity) when he made numerous and extensive misleading and/or false representations to hundreds of investors in order to raise capital for LEDS.[1] The jury also heard evidence from Special Agent Stephen Robinson, a criminal investigator with the IRS, that Johnson controlled approximately 80 financial accounts, 25 of which were used by Johnson to deposit, withdraw, and transfer millions of dollars of fraudulently obtained investor funds. Thus, the evidence was sufficient to prove that Johnson conducted financial transactions in excess of $10,000 with illicitly acquired funds that he knew represented the proceeds of unlawful activity, and that he therefore violated 18 U.S.C. § 1957.

## 18 U.S.C. § 1956(a)(2)(B)(i)

---

[1] Examples of these misrepresentations included statements by Johnson, or brokers acting on his behalf and with his approval, that LEDS would "go public," that LEDS was an approved contract shipper for the United States Postal Service, and that the investors' money would be used only for operating LEDS. The government established at trial that LEDS never went public, it was never an approved contract shipper for the Postal Service, and that Johnson took large sums of investor funds for his own personal use and for other businesses.

To establish the offense of money laundering concealment by use of an international transfer, the government must establish that Johnson transferred funds from within the United States to a place outside of the country, knowing that the funds were proceeds of unlawful activity and intending to conceal or disguise the nature, location, source, ownership, or control of the illicit proceeds. 18 U.S.C. § 1956(a)(2)(B)(i). With respect to Counts 22-27, Johnson argues that while the evidence demonstrated that funds were transferred to Luxembourg from the United States, the government did not prove beyond a reasonable doubt either that he controlled or directed the transfers or that he attempted to conceal or disguise the source of these monies. We agree.

Count 22 charges Johnson with money laundering concealment based upon a transfer of $25,000 from a J&J account in his mother's name to an account in Luxembourg, also in his mother's name. Counts 23-27 charge him with money laundering concealment based upon five transfers from either LEDS' or Johnson's personal accounts in the United States, exclusively controlled by Johnson, to his mother's account in Luxembourg.

As to Count 22,[2] the Court finds the record insufficient to support the jury's

---

[2] The money laundering concealment charges set out in Counts 22-27 of the superseding indictment charge Johnson with violating 18 U.S.C. §§ 1956(a)(2)(B)(i) and 2.
18 U.S.C. § 2 provides that:

conclusion that Johnson caused, directed, induced, or in any way controlled the particular transfer by his mother from her J&J account in the United States to her account in Luxembourg. The Government does not point to, nor can we locate, any evidence suggesting that Johnson had any involvement in this particular transaction. As such, we vacate Johnson's conviction under Count 22 of the superseding indictment.

Counts 23-27 involve five separate transfers of funds to Luxembourg that originated out of two accounts in the United States that Johnson controlled.[3] As we see it, the only issue requiring our consideration is whether the evidence demonstrated that Johnson intended to conceal the origin of the illicit funds when he transferred them to his mother's account in Luxembourg.[4] Evidence of concealment

---

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

[3] On August 11, 1999, Johnson transferred $11,000.00 from his personal Nations Bank account to his mother's account in Luxembourg. On January 14, 1998, Johnson transferred $7,500.00 from a LEDS account at Nations Bank to his mother's account in Luxembourg. On January 28, 1998, Johnson transferred $7,500.00 from a LEDS account at Nations Bank to his mother's account in Luxembourg. On March 27, 1998, Johnson transferred $7,500.00 from a LEDS account at Nations Bank to his mother's account in Luxembourg. Finally, on April 9, 1998, Johnson transferred $80,000.00 from a LEDS account at Nations Bank to his mother's account in Luxembourg.

[4] Our precedent concerning the element of concealment in money laundering charges relates almost exclusively to 18 U.S.C. § 1956(a)(1)(B)(i) (making it unlawful to knowingly conduct a

must be substantial. United States v. Blankenship, 382 F.3d 1110, 1130 (11th Cir. 2004). "Merely engaging in a transaction with money whose nature has been concealed through other means is not in itself a crime . . . . If transactions are engaged in for present personal benefit, and not to create the appearance of legitimate wealth, they do not violate the money laundering statute." United States v. Majors, 196 F.3d 1206, 1213 (11th Cir. 1999) (quoting United States v. Garcia-Emanuel, 14 F.3d 1469, 1474 (10th Cir. 1994)); see also, United States v. Magluta, 418 F.3d 1166, 1176 (11th Cir. 2005) ("[P]ayments for personal benefit out of previously laundered proceeds do not themselves constitute money laundering unless they are designed to conceal the nature or source of the money.") (relying on Majors, 196 F.3d at 1213).

Evidence to consider in determining whether a transaction was designed to conceal includes, among other things:

> statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; a series of unusual financial moves cumulating in the transaction; or expert testimony on practices of

---

financial transaction with unlawfully obtained proceeds in an effort to conceal or disguise the nature, location, source, ownership, or control of the illicit funds). The concealment language is the same for both 18 U.S.C. § 1956(a)(1)(B)(i) and the offense at issue in this case, § 1956(a)(2)(B)(i); therefore, we look to cases addressing the issue of concealment in §1956(a)(1)(B)(i) charges to assist in our analysis of the present issue, as the only substantive difference between these two offenses for our present purposes is whether the funds were transferred out of the United States.

criminals.

Garcia-Emanuel, 14 F.3d at 1475-76; Majors, 196 F.3d at 1213 n. 18. Another important consideration is whether "the money is better concealed or concealable after the transaction than before." Blankenship, 382 F.3d at 1130.

After considerable review, we find the evidence insufficient to support Johnson's money laundering convictions set forth in Counts 23-27 of the superseding indictment. With respect to these five counts, the government presented no evidence of unusual secrecy, questionable structuring, highly irregular features of the transfers, or multiple movements of the same funds that assisted in concealing their original source. Nothing about these transfers suggests that Johnson attempted to avoid detection or attention.

The facts of other cases decided by this Circuit assist us in reaching our conclusion. First, in United States v. Magluta, 418 F.3d at 1176, we upheld a defendant's money laundering conviction pursuant to 18 U.S.C. § 1956(a)(1)(B)(i) when the defendant facilitated multiple transfers of illicitly obtained cash between different associates before ultimately transferring the funds to Israel and depositing them into a bank account bearing a fictitious name, after which the defendant paid his lawyers with checks from that foreign account held in the false name. We concluded that the defendant went to great lengths to structure these highly irregular transactions

10

in a veil of secrecy to conceal the fact that he was using drug proceeds to compensate his lawyers and this behavior, therefore, satisfied the definition of money laundering under § 1956(a)(1)(B)(i).

In United States v. Abbell, 271 F.3d 1286, 1298-99 (11th Cir. 2001), two attorney defendants placed money into prisoner commissary accounts or gave individuals cash on behalf of a leader of the Cali Cartel, a drug smuggling empire. The evidence at trial established that the recipients of the cash either worked for the drug cartel or were family members of those employees and that the money was provided in exchange for their silence about the cartel. The defendants either first received cash from the cartel leader and then gave the money to the recipients, or they would front the cash and then bill the leader for the amounts disbursed. Either way, the defendants disbursed the funds as if they were the providers, not the cartel leader. We found that the evidence supported the jury's conclusion that the cash disbursements were designed to conceal that the cartel leader was the source of these funds and therefore amounted to a violation of § 1956(a)(1)(B)(i).

United States v. Hasson, 333 F.3d 1264, 1275 (11th Cir. 2003), involved a jewelry store owner who prepared false jewelry appraisals and misrepresented both his own qualifications and the quality of particular jewels in an effort to sell items to unsuspecting customers. In affirming his conviction for money laundering pursuant

11

to § 1956(a)(1)(B)(i) and (h), we relied on evidence demonstrating that the defendant funneled proceeds from his fraudulent sales through multiple accounts bearing fictitious names and opened with forged documents, including an account for a shell corporation in the Isle of Man. We further considered that he lied to the FBI and the IRS when questioned about his relationship with this shell corporation. Id.

Finally, in Majors, 196 F.3d at 1211-1214, the first opinion in which we closely examined the concealment element of a § 1956 charge, we affirmed the defendants' money laundering convictions in a securities fraud case where they sold millions of dollars of worthless securities. The evidence in Majors demonstrated that the defendants transferred the proceeds from the scheme between multiple corporate bank accounts set up with multiple signatories in an effort to make it appear that the funds ultimately deposited into the defendants' personal accounts were from a legitimate source. We concluded that moving the ill-gotten gains on multiple occasions between different corporate accounts, some of which were legitimate business accounts, using multiple signatories amounted to an effort to conceal the nature or source of the proceeds under the terms of the statute. Id. at 1214; see also, Blankenship, 382 F.3d at 1129-30(reversing money laundering concealment conviction, concluding that defendant's transfer of funds between two accounts at the same bank, both bearing his name, was insufficient to establish the element of concealment); United States v.

12

Thayer, 204 F.3d 1352, 1354-55 (11th Cir. 2000) (affirming money laundering concealment conviction where defendant funneled profits from an illicit scheme into various corporate accounts, some of which used fictitious names, before ultimately placing the money into her personal account); See generally, Donald F. Samuel, Eleventh Circuit Criminal Handbook § 65 (2005) (providing an insightful compilation and analysis of money laundering cases from this Circuit).

In the examples set forth above, the suspect transactions involved either numerous transfers, multiple accounts, fictitious accounts, or the use of third-parties to effectuate the concealment of the actual source of the money. In this case, however, Johnson simply transferred money from his own accounts to his mother's account. These were simple and straightforward banking transactions, easily discovered through a cursory review of Johnson's bank accounts. See, United States v. Esterman, 324 F.3d 565, 572 (7th Cir. 2003) ( "[C]ases in which money laundering charges have not succeeded are typically simple transactions that can be followed with relative ease . . . ."); Garcia-Emanuel, 14 F.3d at 1475 ("[A]ctions that are merely suspicious and do not provide substantial evidence of a design to conceal will not alone support a conviction.").

Our precedent discussed above demonstrates that a money laundering concealment conviction pursuant to § 1956 requires evidence of something more than

13

a simple transfer of funds between two accounts, each bearing the parties' correct name. There must be some evidence that the funds are more concealed after the transaction is completed than before. Decisions by our sister circuits also support this conclusion. See Garcia-Emanuel, 14 F.3d at 1478 (holding that transferring funds from an account in the defendant's name to an account of a Columbian national in Florida was insufficient to support a money laundering conviction pursuant to § 1956(a)(1)(B)(i)); United States v. Dobbs, 63 F.3d 391, 397 (5th Cir. 1995) (reversing a money laundering conviction under § 1956(a)(1)(B)(i) where the defendant deposited illicitly obtained funds into his wife's bank account, after which she used the money to pay ordinary household expenses, by finding that this typical and straight forward banking transaction failed to demonstrate an intent to conceal the origin of the money).[5] Consequently, viewing the evidence in the light most favorable to the government, we find ourselves constrained to conclude that no reasonable jury could find that the transactions set forth in Counts 23-27 of the superseding indictment constituted an effort to conceal the nature or source of the

_____

[5] We certainly do not overlook the fact that Johnson transferred the funds into a foreign bank account. In United States v. Polichemi, 219 F.3d 698, 707 (7th Cir. 2000), the Seventh Circuit affirmed the Defendants' money laundering concealment convictions pursuant to 18 U.S.C. § 1956(a)(2)(B)(i) based, at least in part, on evidence presented by the government that financial transactions are more difficult to investigate once funds are moved through foreign accounts. In this case, however, the government does not direct us to any evidence in the record suggesting that Johnson's transfer of the money to a foreign account made the transactions more difficult to trace.

14

unlawful proceeds, and we accordingly VACATE Johnson's convictions for these counts.

## 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h)

18 U.S.C. § 1956(h)[6] makes it unlawful to conspire to violate any provision of §§ 1956 or 1957. The jury convicted Johnson of conspiring to launder the proceeds of securities fraud with the intent to promote such unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i)(Count 28). To establish the offense of promotional money laundering, the government must demonstrate that: (1) the defendant conducted or attempted to conduct a financial transaction; (2) the defendant knew that the funds involved in the transaction represented the proceeds of illicit activity (securities fraud in the present case); (3) the funds involved were in fact the proceeds of unlawful activity; and (4) the defendant conducted the financial transaction with the intent to promote the specified unlawful activity. United States v. Carcione, 272 F.3d 1297, 1302 (11th Cir. 2001).

To obtain a conviction for a promotional money laundering conspiracy, the conviction presently at issue, the government bears the burden of proving beyond a

---

[6] Tile 18 U.S.C. § 1956(h) provides that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

reasonable doubt that: (1) two or more persons agreed to commit a crime, in this case a § 1956(a)(1)(A)(i) promotional money laundering violation; and (2) that Johnson, knowing the unlawful plan, voluntarily joined the conspiracy. United States v. Silvestri, 409 F.3d 1311, 1328 (11th Cir. 2005).

Count 28 charges only Johnson and his co-defendant, John Cook II ("Cook"), with conspiring to conduct financial transactions knowing that the transactions involved proceeds from securities fraud.[7] Cook was acquitted of all charges. The government submits that the evidence of this conspiracy centered around the purchase by Cook of Argus Securities, Inc., ("Argus") a brokerage firm. According to the government, Johnson intended to facilitate the purchase of Argus so that he and Cook could use the brokerage firm to underwrite LED's stock sales. To accomplish this goal, the evidence demonstrated that Johnson transferred close to $550,000.00 of investor funds from a LEDS account to a J&J account on March 10, 1999. On that same day, Johnson's mother transferred that same amount of money from the J&J account to their attorney's trust account with a memo on the transfer stating that the funds were a loan for the purchase of Argus. Cook thereafter purchased Argus with the funds provided by J&J.

---

[7] In contrast, the conspiracy to commit securities fraud charged in Count 1, unlike the present conspiracy to commit money laundering, charged Johnson, Cook, and other persons known and unknown to the grand jury with conspiring to commit securities fraud. 18 U.S.C. § 371.

16

Johnson argues that insufficient evidence exists to uphold his conviction for the money laundering conspiracy, because the government failed to establish that Cook, the only alleged co-conspirator, knew that the money used to purchase Argus came from LEDS. Consequently, submits Johnson, the government did not prove that he and Cook agreed to launder the proceeds of the securities fraud in order to promote the scheme.

The government responds that it is of no consequence that Cook was acquitted of these charges, as this Circuit has explicitly rejected the "rule of consistency" in conspiracy cases, that rule being: a conspiracy conviction cannot stand against one defendant when all other alleged co-conspirators are acquitted. United States v. Andrews, 850 F.2d 1557, 1560 (11th Cir. 1988) (en banc) (citing Herman v. United States, 289 F.2d 362, 368 (5th Cir. 1961)).[8] In this Circuit, "[c]onsistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand." Id. at 1561; see also, United States v. Wright, 63 F.3d 1067, 1074 (11th Cir. 1995) ("Accordingly, inconsistent verdicts [on conspiracy charges], whether provided by juries or judges, are not subject to reversal merely because they are inconsistent.").

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981)(en banc), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

The government is certainly correct that the rule of consistency has no applicability in this Circuit. Accordingly, in a situation such as this one, where the jury acquitted the only alleged co-conspirator in a money laundering conspiracy charge, the question for the court becomes whether the evidence was sufficient to support a conspiracy between Johnson and Cook. Wright, 63 F.3d at 1074. In this case, we find the evidence insufficient to sustain Johnson's conviction.

The government submits that the evidence established beyond a reasonable doubt that Johnson and Cook disguised the purchase of Argus by making it appear that Cook borrowed the purchase money from Johnson's mother, when, in fact, they used investor funds for the purchase and, therefore, the Argus transaction promoted the ongoing securities fraud. While we agree with the government that the evidence established that Johnson disguised the real source of the funding for the purchase of Argus, we disagree that it also adequately demonstrated Cook's knowledge that the money came from investor funds and not Johnson's mother.

Special Agent Robinson testified that Johnson transferred almost $550,000.00 from a LEDS account to his mother's J&J account on March 10, 1999, after which, on that same day, Johnson's mother transferred the same amount of money from the J&J account to a trust account so that Cook could complete the purchase of Argus. Berk Beckoff, the former owner of Argus, testified that during the negotiation for the

18

sale of his firm, Johnson informed Beckoff that Cook would be purchasing the company with a loan from Johnson's family. In connection with the purchase, Cook needed to obtain a "principal's" license from the National Association of Securities Dealers. Beckoff testified that disclosure documents provided to the NASD on behalf of Cook by his attorney, Mr. Gritter, stated that Cook would enter into a loan agreement with J&J Management Consulting to finance the purchase of Argus. Finally, Cook testified at trial. During both direct and cross-examination on the subject of Argus, Cook consistently stated that he borrowed the purchase amount from Johnson's mother, Caterina, and that Johnson told him she could afford to loan him the money as a result of certain real estate she owned in Canada and her relationship with a wealthy man. According to Cook, Johnson never indicated to him that any of the borrowed funds would be coming from LEDS, nor did anyone else indicate to Cook that LEDS had any financial interest in Argus. Furthermore, Cook testified that after he purchased Argus, he alone owned and controlled the company and that Johnson had nothing to do with its operations.

After substantial consideration and an extensive review of the record on this topic, we find no evidence establishing that Cook conspired with Johnson to commit promotional money laundering through the acquisition of Argus Securities. In order to sustain Johnson's conviction for this conspiracy, we must find evidence that

19

Johnson and Cook agreed to commit money laundering -- in this case, that they agreed to purchase Argus with proceeds from the securities fraud in order to promote the unlawful scheme. Silvestri, 409 F.3d at 1328. Clearly, the evidence establishes that Johnson used tainted funds from the LEDS accounts to facilitate the purchase of Argus, but the record does not support the additional conclusion that Cook knew the money came from LEDS. Without any evidence that Cook agreed to or knew that the transaction would be structured in this manner, we find that the government failed to prove beyond a reasonable doubt that Johnson and Cook agreed to commit a crime, and as such, we cannot uphold the conviction for conspiracy to commit money laundering. Therefore, Johnson's conviction pursuant to Count 28 of the superseding indictment is VACATED.[9]

Accordingly, we **AFFIRM** Johnson's convictions for conspiring to and committing securities fraud as set forth in Counts 1-15, perjury as set forth in Counts 16-17 and money laundering as set forth in Counts 18-21. We **VACATE** Johnson's convictions for conspiring to and committing money laundering as set forth in Counts

---

[9] Because we reverse the conviction pursuant to a sufficiency of the evidence review, we find it unnecessary to address Johnson's additional argument that the district court constructively amended the superseding indictment and committed reversible error by charging the jury under Count 28 that in order to establish this conspiracy offense, they must find that "two or more persons, in some way, came to a mutual understanding" (emphasis supplied), as the indictment charged only Johnson and Cook with being members of the conspiracy.

22-28 and **REMAND** this case for re-sentencing in light of this decision.[10]

---

[10] Johnson's motion to disqualify his counsel is denied for purposes of this appeal with leave to re-file in the district court prior to re-sentencing.