[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10634
_____

D.C. Docket No. 8:06-cr-00026-RAL-TBM-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RICHARD JOSEPH SOLOMON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 21, 2013)

Before CARNES, HULL and FAY, Circuit Judges.

PER CURIAM:

This criminal case involves a far-reaching and long-lasting scheme to

deceive persons about the ownership and worth of assets identified on financial

statements of insurance companies and related businesses.  A jury convicted

Richard Solomon—along with several coconspirators—of one count of conspiracy

to commit (i) mail fraud, in violation of 18 U.S.C. § 1341, (ii) wire fraud, in

violation of 18 U.S.C. § 1343, and (iii) insurance fraud, in violation of 18 U.S.C. §

1033(c)(1), all of which violated 18 U.S.C. § 371.  Solomon was also convicted of

one count of conspiracy to commit money-laundering, in violation of 18 U.S.C. §

1956(h).  He now appeals these convictions, arguing that the government presented

insufficient evidence to establish the conspiracy counts and his motion for

judgment of acquittal was improperly denied by the district court.  Solomon also

argues that the indictment was untimely under the relevant statutes of limitations.

After oral argument, reviewing the record, and for the reasons that follow, we

affirm Solomon's convictions.

## I. Background

The facts of this case are more fully set forth in *United States v. Broughton*,

689 F.3d 1260 (11th Cir. 2012), in which this Court affirmed the convictions of

two of Solomon's codefendants, rejecting their claims of insufficient evidence and

an untimely indictment.  *Id.* at 1263.  However, a quick summary of the facts[1] as

they relate to Solomon is helpful.

---

[1] In reviewing a denial of a judgment of acquittal, this Court views the evidence in the light most favorable to the government.  *United States v. Eckhardt*, 466 F.3d 938, 944 (11th Cir. 2006).

2

In the early 1990s, Solomon joined *Cooperativa de Ahorro y Credito Gatun* ("Gatun"), a Panamanian cooperative acting as a credit union.  In his position at Gatun, Solomon caused the cooperative to issue certificates of deposit purportedly collateralized by billions of dollars of gold doré—a processed, crude bar of low-grade rock that contains at least 50 percent gold and can be further refined to make gold bullion.  Even though the gold doré never existed, Solomon delivered a master certificate to Panamanian authorities, claiming that Gatun was assigned 135,000 metric tons of gold doré valued at $1,080,000,000.

In 1995, Solomon, through his companies Malik International, Inc. and Malik International, S.A., agreed to rent certificates of deposit backed by Gatun's false collateral to Michael Ernest Zapetis, Sr. ("Zapetis") and his wife, Karen Carazo Zapetis ("Carazo"), while Solomon maintained ownership and control of the Gatun CDs.  Zapetis and Carazo had previously created West Indian companies, including American Indemnity Company, Ltd ("American Indemnity"), Star Insurance Company ("Star Insurance"), and Global Insurance Company ("Global Insurance").[2]  Zapetis and Carazo also formed Costa Rican subsidiary companies, including *Capitales Uno de America* ("Cap Uno"), to hold and claim the rented assets, and formed *Consorcio de Segurus Polaris, S.A.*

---

[2] While the names of these companies suggested that they were insurance companies, the West Indian governments did not require the companies to be licensed as insurance companies until 1997, at which point the minister of finance rejected their applications for licenses to sell insurance.

("Consorcio"), a Costa Rican company which provided administrative support for the "insurance" companies.

While Solomon's role in the conspiracy was often just leasing uncapitalized Gatun CDs to Zapetis's and Carazo's companies, Solomon was more active in other transactions. In late 1995, Solomon, Zapetis and Carazo agreed to have American Indemnity become a subsidiary of International Standards Group ("ISG")—with Solomon owning fifty percent of ISG stock—and to have American Indemnity sell reinsurance through a London broker. Solomon, through his Malik companies, provided Cap Uno with a Gatun CD purportedly worth $40 million, so American Indemnity could show the assets on its balance sheet. Solomon and Zapetis then secured an audited financial statement for American Indemnity by having Gatun "verify" that the Gatun CDs issued to Cap Uno were backed by assets.[3]

Solomon also had an active role in allowing Star Insurance to front as a reinsurer. World Vision Entertainment, Inc. ("World Vision")[4] purchased Global Insurance from Zapetis and Carazo, and purchased *Capitales Nueve de America* ("Cap Nueve") from Consorcio. Jaillet knew that Global Insurance only rented the

---

[3] After Panamanian authorities intervened and took control of Gatun for issuing unauthorized CDs, Solomon wrote to the London broker claiming that the intervention did not extend to the Gatun CDs and the CDs were backed by the gold doré.

[4] World Vision was a Florida-based company operated by Alfred Jaillet, who pleaded guilty and testified at trial.

Gatun CDs and could not use them to pay claims, but it used the CDs to create the illusion that Global Insurance had assets that backed World Vision's obligations on its loans. Zapetis, Carazo, and Jaillet also agreed that Star Insurance—still owned by Zapetis and Carazo—would reinsure Global Insurance's liabilities in exchange for a portion of what investors paid for Global Insurance's "protection."

In an effort to expand Star Insurance's ability to sell reinsurance, in December 1998, Star Insurance acquired an additional $200 million in Gatun CDs from Solomon. Solomon personally delivered the CDs to Zapetis and signed the asset investment agreements. Solomon, Zapetis, and Carazo discussed how Solomon's assets would not be at risk from Star Insurance's reinsurance commitments and that Solomon would still be paid rent on the CDs. When World Vision defaulted on its notes, its victims were referred to Gatun, and Gatun denied that Star Insurance had ever guaranteed World Vision's notes.

In 1996, the Internal Revenue Service began its investigation that led to the charges against Solomon. The investigators obtained Costa Rican bank records from 1998 and 1999, which demonstrated payments made from Consorcio to Solomon (or the Malik companies under Solomon's control). Solomon agreed to be interviewed by law enforcement during the investigation and later again after his arrest. He testified in his own defense at trial.

5

On January 17, 2006, a grand jury returned the two-count indictment against Solomon and nine others.  Prior to trial, Solomon adopted the ultimately unsuccessful motions to dismiss the indictment, in which Zapetis and William Broughton argued that the statute of limitations had expired prior to the indictment. Only four of those indicted proceeded to trial—Solomon, Broughton, Richard Peterson, and William Clancy.  A jury convicted Solomon, William Broughton, and Peterson on both counts and Clancy on the first count.  Solomon was sentenced to 60 months' imprisonment on the first count and 66 months' imprisonment as to the second count, to run concurrently.  Solomon timely appeals his convictions.[5]

## II.  Standard of Review

This Court reviews challenges to the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict, to determine if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Eckhardt*, 466 F.3d at 944 (quotation omitted).  "[T]he question is whether reasonable minds *could* have found guilt beyond a reasonable doubt, not whether reasonable minds *must* have found guilt beyond a reasonable doubt." *United States v. Bacon*, 598 F.3d 772, 775 (11th Cir. 2010) (quoting *United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir. 2008)).  Moreover, when a

---

[5] Broughton and Peterson also appealed and this Court upheld their convictions in *Broughton*. 689 F.3d at 1263.

6

defendant testifies in his own defense, the jury is free to disbelieve him and consider his statements as untruthful and as substantive evidence of the defendant's guilt. *Id.* at 776 (citation omitted).

The denial of a motion to dismiss the indictment is reviewed for an abuse of discretion, although the legal sufficiency of the allegations in the indictment is a question of law reviewed *de novo*. *United States v. York*, 428 F.3d 1325, 1331 n.8, (11th Cir. 2005) (citations omitted). A district court's interpretation of a statute of limitations is reviewed *de novo*. *United States v. Harriston*, 329 F.3d 779, 783 (11th Cir. 2003) (citation omitted).

## III. Discussion

On appeal, Solomon argues the government did not present sufficient evidence—as required for a conspiracy conviction—to establish Solomon's intent to defraud, knowledge of the scheme, or a meeting of the minds with the coconspirators. Alternatively, Solomon argues that the government failed to establish the single conspiracy charged in the indictment. Finally, Solomon argues that the district court erred when it denied the motions to dismiss the indictment as barred by the applicable limitations period. We address each of Solomon's arguments in order.

### A.

Sufficient evidence existed to establish Solomon's intent to defraud, knowledge of the scheme, and a meeting of the minds with the coconspirators in Count I of the indictment. Count I charges Solomon with conspiracy to commit mail fraud, wire fraud, and insurance fraud. To prove a conspiracy in violation of 18 U.S.C. § 371, the evidence must show "(1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003) (citation omitted).

> To prove a conspiracy to commit wire fraud, the government need not demonstrate an agreement specifically to use the interstate wires to further the scheme to defraud; it is enough to prove that the defendant knowingly and voluntarily agreed to participate in a scheme to defraud and that the use of the interstate wires in furtherance of the scheme was reasonably foreseeable.

*Id.* (citations omitted).

The existence and participation in a conspiracy may be proved by circumstantial evidence and inferred from concert of action. *See, e.g.*, *United States v. Guerra*, 293 F.3d 1279, 1285 (11th Cir. 2002) (citation omitted). Accordingly, the government can establish a defendant's intent to defraud, knowledge of the scheme, and a meeting of the minds with circumstantial evidence, and a jury can infer the elements from the defendant's conduct. *See, e.g.*, *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir. 2009) ("A jury may

8

infer an intent to defraud from the defendant's conduct." (citations omitted));

*United States v. Suba*, 132 F.3d 662, 673 (11th Cir. 1998) ("Guilty knowledge can

rarely be established by direct evidence, especially in respect to fraud crimes

which, by their very nature, often yield little in the way of direct proof." (citation

omitted)); *United States v. Hawkins*, 905 F.2d 1489, 1496-97 (11th Cir. 1990)

("The Government need not produce direct proof of scienter in a fraud case,

however; circumstantial evidence of criminal intent can suffice." (citation

omitted)). Also, "[e]vidence that a defendant personally profited from a fraud may

provide circumstantial evidence of an intent to participate in that fraud." *United*

*States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011) (citation omitted).

In the instant case, the government has clearly presented sufficient evidence

to sustain Solomon's conviction as to Count I. The evidence at trial established

that Solomon provided false information to Panamanian authorities regarding the

value of the Gatun master certificate. He also rented multiple Gatun CDs to

Zapetis and Carazo, personally profiting by the receipt of rent payments from

Consorcio.[6] Moreover, Solomon owned 50% of ISG, which in turn owned

American Indemnity, which sold reinsurance despite being undercapitalized and

---

[6] Solomon testified that the gold doré backing the master certificate belonged to Robert Cheney, and Cheney assigned the master certificate to Solomon. However, no record of any payment to Cheney was established and Solomon admitted—during a post-arrest interview—that he had lost contact with Cheney. The jury apparently did not find Solomon's trial testimony convincing, which the jury was free to do.

9

having no intent to pay on claims.  Solomon drafted a letter to deflect the London broker's concern over the Panamanian government's intervention of Gatun.  Carazo testified that Solomon had been a full partner in the scheme to have ISG, American Indemnity, and Cap Uno sell reinsurance through the London broker based on fraudulent balance sheets claiming ownership of $40 million in Gatun CDs.  Finally, Solomon admitted that he knew Zapetis and Carazo would use the Gatun CDs to issue financial guarantees and sell reinsurance, and he contributed to their effort by providing additional Gatun CDs to Star Insurance for $200 million.

As to the indictment's second count, in order to sustain the conviction for conspiracy to commit a money-laundering offense,[7] the government had to establish (1) an agreement existed between two or more persons to commit a money-laundering offense and (2) knowing and voluntary participation in that agreement by the defendant.  *United States v. Johnson*, 440 F.3d 1286, 1294 (11th Cir. 2006) (citation omitted).  The government did so in the present case by establishing that Solomon and his Malik companies received rental payments from the Gatun CDs, which were used to defraud consumers.  The government also established that Solomon knew that Zapetis and Carazo were using the Gatun CDs to fraudulently inflate the financial statements of insurance companies and that

---

[7] The underlying money-laundering offense alleged violations of 18 U.S.C. §§ 1956(a)(2)(B)(I) and 1957.

10

Solomon participated in the scheme by contributing additional Gatun CDs, contingent on his receiving rental fees.

Solomon's arguments of insufficient evidence seem to be that the defendants presented enough evidence to rebut all of the government's allegations. Alas, Solomon's argument is misplaced as it focuses on the contrary evidence that he presented at trial, not the lack of evidence presented by the government. As previously stated, the jury was free to disbelieve Solomon's testimony and evidence. The government clearly presented sufficient evidence so that a rational jury *could* have found him guilty of both counts beyond a reasonable doubt. Thus, the district court did not err in denying Solomon's motion for acquittal as to both counts in the indictment.

### B.

Solomon argues alternate grounds for reversal exist because the government failed to establish the single conspiracy charged in the indictment, instead establishing multiple, smaller conspiracies. He further argues that by failing to establish the single conspiracy, a material, prejudicial variance existed between the proof at trial and the indictment. Again, Solomon's argument is unconvincing.

"A material variance between an indictment and the government's proof at trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy." *United States v. Castro*, 89 F.3d 1443, 1450

(11th Cir. 1996) (citation omitted). "We will not reverse convictions based on a variance unless the variance was (1) material and (2) substantially prejudiced the defendants." *United States v. Coy*, 19 F.3d 629, 633 (11th Cir. 1994) (citation omitted).

"The question of whether the evidence establishes a single conspiracy is a factfinding for the jury and . . . there will be no variance if, viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could have found beyond a reasonable doubt the existence of a single conspiracy." *United States v. Adams*, 1 F.3d 1566, 1584 (11th Cir. 1993) (citations omitted). To determine if a jury could have reasonably found a single conspiracy, we consider "(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." *United States v. Moore*, 525 F.3d 1033, 1042 (11th Cir. 2008) (citation omitted). However, "[i]f a defendant's actions facilitated the endeavors of other co-conspirators, or *facilitated the venture as a whole*, a single conspiracy is established" and "[i]t is irrelevant that the particular co-conspirators did not participate in every stage of the conspiracy." *Id.* (quotation and citation omitted).

In the instant case, the evidence established that the Gatun CDs issued by Solomon were the basis for falsifying the insurance companies' financial statements which was the crux of the criminal activity in the indictment.

12

Solomon's interactions with Zapetis and Carazo, as well as his active role in facilitating the American Indemnity and Global Insurance fraudulent activities, support the jury's finding of a single conspiracy. It is irrelevant that the government did not present evidence of Solomon's interaction with each and every individual, at each stage of the conspiracy. Sufficient evidence was presented for a reasonable jury to find the existence of the single, charged conspiracy.

Even if Solomon had established a material variance, he would still have to establish that he was substantially prejudiced by the variance. Substantial prejudice occurs when (1) the defendants are deprived of fair notice of the charged crimes; or (2) when the defendants are prejudiced by the spillover of the proof of other crimes. *Coy*, 19 F.3d at 634.[8] When determining if a defendant was prejudiced by spillover evidence, this Court has looked to the adequacy of the jury instructions and if the jury returned divergent verdicts. *United States v. Glinton*, 154 F.3d 1245, 1252 (11th Cir. 1998).

In the instant case, Solomon cannot establish any prejudice from any potential variance. The court instructed the jury

> that proof of several separate conspiracies is not proof of the single
> overall conspiracy charged in Count I unless one of the several
> conspiracies which is proved is a single conspiracy which Count I
> charges. . . . and if you should find that a particular Defendant was a

---

[8] Solomon does not argue that he was denied fair notice, but that he was prejudiced by spillover evidence and having to defend against the actions of other individuals involved in other conspiracies.

13

member of some other conspiracy, not the one charged in Count I of the Indictment then you must acquit that Defendant as to Count I.

The court gave the same instruction as to Count II. These instructions are similar to the instructions we have previously found adequate to prevent spillover. *See Glinton*, 154 F.3d at 1252. Moreover, the jury convicted Solomon, Broughton, and Peterson on both counts, but found Clancy not guilty as to Count II. This further suggests that "the jury carefully followed the court's limiting instructions and had no difficulty compartmentalizing the evidence presented." *Id.* Thus, there was no material, prejudicial variance between the proof at trial and the single conspiracy charged in the indictment.

## C.

Lastly, Solomon challenges the district court's denial of the defendants' motions to dismiss the indictment as barred by the applicable statutes of limitations. We addressed this issue at length and affirmed the district court's order on these same motions in *Broughton*. *See* 689 F.3d at 1272-76. We found that the statute of limitations was properly tolled and that the indictment was timely, regardless of whether the five-year or the ten-year statute of limitation applied to Count I. *Id.* Solomon introduces no new arguments that warrant us to alter our prior ruling regarding the district court's order. *See This That & the Other Gift & Tobacco, Inc. v. Cobb Cnty, Ga.*, 439 F.3d 1275, 1283-84 (11th Cir. 2006) ("When a court decides a question of law, the only means by which the law-

14

of-the-case doctrine can be overcome is if: (1) since the prior decision, new and substantially different evidence is produced, or there has been a change in the controlling authority; or (2) the prior decision was clearly erroneous and would result in a manifest injustice." (quotation omitted)).  Thus, we again find no error in the district court's denial of the defendants' motions to dismiss the indictment.

## IV.  Conclusion

Accordingly, Solomon's convictions are

**AFFIRMED**.