[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11137

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOHN M. THOMAS,
a.k.a. John Thomas,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:21-cr-00040-MCR-HTC-1

_____

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges

PER CURIAM:

John Thomas appeals from his 168-month sentence for 16 counts of wire fraud, 4 counts of money laundering, and 4 counts of money laundering to conceal proceeds of unlawful activity. On appeal, Thomas raises two main arguments: (1) the district court plainly violated Federal Rule of Criminal Procedure 11(b)(3) by accepting his guilty plea to Counts 21 through 24 because there was an insufficient factual basis to support them and (2) the district court procedurally erred by applying the two-level sophisticated-means enhancement to his guideline range under U.S.S.G. § 2B1.1(b)(10)(C) because he did not use sophisticated means to perpetrate his insurance-fraud scheme. After careful review of the record, we AFFIRM.

## I.

Between April 22, 2013, and February 16, 2021, Thomas defrauded 69 of his clients at Thomas Insurance LLC in Pensacola, Florida, through premium diversion. Thomas collected insurance premiums from his clients and falsely represented to them that he purchased insurance policies. Thomas provided his victims with fraudulent insurance documents indicating the fake policies were in effect. He also falsely represented to one victim that he had obtained an annuity by providing a fraudulent contract and portfolio summary. Several of Thomas's victims were his personal friends.

After Hurricane Sally hit the Gulf Coast in 2020, several of Thomas's victims learned they were uninsured as they sought to file claims for hurricane damage to their property.

Through premium diversion, Thomas received payments of at least $4.8 million from his victims and his fraud caused at least $2.2 million in unpaid claims caused by hurricane, fire, and liability losses. When one victim attempted to submit a claim, Thomas directed the victim to send photos and damage estimates to a fake Colorado company he created: "JSSK Risk Advisors, LLC." Thomas pretended to be an insurance adjuster named "Scott Powrie" at JSSK Risk Advisors to "deny" the victim's claim.

Thomas was indicted with 16 counts of wire fraud in violation of 18 U.S.C. §§ 1343, 2. He also faced 4 counts of money laundering in violation of 18 U.S.C. § 1957.[1] Finally, Thomas was indicted with 4 counts of money laundering to conceal proceeds of unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i). These violations involved the following four transactions: (1) $50,000 transfer from his bank account to his Family Trust bank account, then transferred to purchase a Lexus; (2) $278,730.14 transfer from his bank account to his Family Trust bank account, then transferred to purchase a condominium on Pensacola Beach, Florida; (3) $30,469.80 check from his bank account to exchange for 20 one-

---

[1] These counts related to (1) $100,000 to restore a Jeep; (2) an African Safari; (3) real estate in Park City, Utah; and (4) a metal roof for his home in Gulf Breeze, Florida.

ounce gold coins; (4) $97,557.19 transfer from his bank account to an E⋆Trade brokerage account.

Thomas pled guilty to all 24 counts after the magistrate judge conducted a colloquy with Thomas to ensure that he was pleading guilty knowingly and voluntarily. The magistrate judge recommended that the court accept Thomas's plea, and noting no timely objections, the district court accepted the guilty plea.

At his sentencing hearing, Thomas's counsel objected to the sophisticated means enhancement, among other things. Counsel described Thomas's fraud as "incredibly simple" and stated Thomas's ability to go undetected for almost eight years stemmed from Thomas's special skill and the vulnerability of his victims, not sophistication. The court overruled all of Thomas's objections, including for sophisticated means. Based on Thomas's PSI, the district court determined Thomas's guideline range to be 168 to 210 months in prison. Two victims testified, Thomas spoke, and the court explained its assessment of the § 3553 factors and sentenced Thomas to 168 months in prison followed by three years of supervised release. Thomas timely appealed.

## II.

When a defendant alleges Rule 11 violations on appeal rather than before the district court, we review for plain error. *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285 (11th Cir. 2015). "To prevail under the plain error standard, an appellant must show: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the

judicial proceedings." *United States v. Ramirez-Flores*, 743 F.3d 816, 822 (11th Cir. 2014).

Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires courts to "determine that there is a factual basis" for a guilty plea "[b]efore entering judgment." In *United States v. Majors*, we outlined that an 18 U.S.C. § 1956(a)(1)(B)(i) violation requires the following:

> (1) that [the defendant] conducted or attempted to conduct a financial transaction; (2) that the transaction involved the proceeds of a statutorily specified unlawful activity; (3) that [the defendant] knew the proceeds were from some form of illegal activity; and (4) that [the defendant] knew a purpose of the transaction was to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

196 F.3d 1206, 1212 (11th Cir. 1999). Personal payments made with "previously laundered proceeds" violate § 1956 when "designed to conceal the nature or source of the money." *United States v. Magluta*, 418 F.3d 1166, 1176 (11th Cir. 2005). "Evidence that a defendant converted funds into a form that is more difficult to trace, easier to hide, or less suspicious," such as exchanging cash for jewelry, can support a violation of § 1956. *United States v. Naranjo*, 634 F.3d 1198, 1210 (11th Cir. 2011). Regardless of whether the source of the transacted money was easily discoverable, "the statute requires only that proceeds be concealed, not that they be concealed well." *Id*. Several types of evidence can support an intent to conceal:

defendants' statements about their intent, secretive transactions, structures that attempt to avoid attention, irregular transactions, concealing owners through third parties, series of odd movements leading to transactions, or expert testimony. *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1475–76 (11th Cir. 1994).

But we have concluded that transferring money between accounts that each bore the defendant's name did not violate § 1956(a)(1)(B)(i) because the defendant did not receive "any marginal increase in secrecy" through these movements and used the minimum possible number of transactions. *United States v. Blankenship*, 382 F.3d 1110, 1128–29 (11th Cir. 2004). We also found insufficient evidence of concealment where the defendant transferred money from accounts located in the United States to one belonging to his mother located in Luxembourg.[2] *United States v. Johnson*, 440 F.3d 1286, 1291, 1293 (11th Cir. 2006) (per curiam).

Here, the district court did not plainly violate Rule 11(b)(3) by finding that there was a sufficient factual basis to accept Thomas's guilty plea as to Count 23. That count involved a transaction to convert money from a bank account into gold coins. This financial transaction involved the proceeds of an unlawful activity, which Thomas knew. Per *Naranjo*, a form that is "more difficult to trace" or "easier to hide" can support a § 1956 conviction. 634 F.3d at 1210. The gold coins would be easier to hide than other assets

---

[2] In *Johnson*, we reviewed a conviction under 18 U.S.C. § 1956(a)(2)(B)(i), which involves international transactions but otherwise had identical language to § 1956(a)(1)(B)(i). 440 F.3d at 1290.

23-11137                Opinion of the Court                7

and moving gold coins would be harder to trace than moving money from a bank account. Violating § 1956 "requires only that the proceeds be concealed, not that they be concealed well." *Id.* at 1210. Under our precedent, the district court did not clearly err in finding a factual basis for Count 23.

Although the district court violated Rule 11(b)(3) with respect to Count 24, the error did not affect Thomas's substantial rights. Count 24 related to the transfer of funds between a personal bank account and a brokerage account, both of which had Thomas's name on them. We have previously held that merely moving money between accounts that both belong to a defendant does not constitute a violation of § 1956. *See Blankenship*, 382 F.3d at 1119. Whether there was sufficient factual basis to support a guilty plea on Counts 21 and 22 presents a closer call. Both counts relate to funds moved from one personal bank account to a trust account and then used to purchase a Lexus (Count 21) and a condominium (Count 22). Both transactions used proceeds of an unlawful activity. Still, they seem more analogous to personal payments than concealment, especially given the single transfer, to a family trust, before making purchases

Nonetheless, this does not call for reversal under plain error review because Thomas has not shown that the error impacted his substantial rights. Even if he could show that he would not have pled guilty, changing the outcome of his convictions on Counts 21, 22, and 24 would not impact the enhancement for violating § 1956,

which only requires *one* conviction under that statute.  *See* U.S.S.G. § 2S1.1(b)(2)(B).

## III.

We review the application of the sophisticated-means enhancement for clear error.  *United States v. Feaster*, 798 F.3d 1374, 1380 (11th Cir. 2015).  We will not reverse the district court's application of the enhancement "'unless we are left with a definite and firm conviction that a mistake has been committed.'"  *Id.* (quoting *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010)).

An offense that "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means" should result in a two-level increase.  U.S.S.G. § 2B1.1(b)(10)(C).  The commentary outlines that the sophisticated means enhancement applies to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."  *Id.* § 2B1.1, cmt. n.9(B).  Examples include locating various telemarketing offices in different jurisdictions or using "fictitious entities, corporate shells, or offshore financial accounts" to "hid[e] assets or transactions."  *Id.*  Courts evaluate conduct in its entirety rather than each individual step.  *Feaster*, 798 F.3d at 1380.  Regardless of its elements, "the scheme itself may be designed in a sophisticated way that makes it unlikely to be detected, allowing it to continue for an extended period and to impose larger losses."  *Id.* at 1381.  Even schemes with a sole participant can employ sophisticated means. *Id.*

The district court did not clearly err in applying the sophisticated means enhancement. We evaluate Thomas's fraudulent scheme in its totality. *See Feaster*, 798 F.3d at 1380. Although individual fraudulent insurance documents may seem "simple," Thomas made them in a way that created a sophisticated scheme. Thomas created fraudulent insurance documents and fabricated an annuity portfolio. In addition, Thomas made up an email address for his alias "Scott Powrie" at the fake "JSSK Risk Advisors, LLC" to deny one of his victim's insurance claims.

Our decision does not change solely because Thomas acted alone. *Feaster* shows that individual actors can receive the sophisticated means enhancement. *Id.* at 1381. On his own, Thomas managed to conceal his fraud for over seven years and cause millions of dollars in losses. In light of our precedent and Thomas's actions, the district court did not clearly err in applying the two-level sophisticated-means enhancement under § 2B1.1(b)(10)(C).[3]

For the reasons discussed above, the decision of the district court is **AFFIRMED.**

---

[3] The government also argues that we could affirm based in *United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006) because the district court would have given Thomas the same sentence even if the enhancement did not apply. But because the district court did not err in applying the enhancement, we need not consider whether the claimed error was harmless under *Keene*.